DENNY v. ROYAL INDEMNITY CO. OF NEW YORK ET AL.

*Insurance—Action against indemnity company to collect un-
paid judgment against insured—Original action not res
judicata where insurer not party thereto—Insurer not
estopped because its attorney defended insured—Indemnity
policy cannot be enlarged or diminished by judicial con-
struction—Question of fact whether employe drove auto-
mobile with insured's permission—Employe, operating em-
ployer's automobile, deviated from route on personal busi-
ness—No acquiescence or implied permission where em-
ployer without knowledge of facts—Evidence of employer's
permission insufficient to submit case to jury—Insurer not
liable where injuries occasioned by employe on personal
business.*

1. Where indemnity company being sued to collect on judg-
ment against insured after insured's failure to pay judg-
ment, was not party to original suit, such suit cannot be
*res judicata* as to indemnity company.

2. In action for injuries from automobile collision, insurer, not
a party to action against insured, was not estopped from
disputing its liability merely because its attorneys ap-
peared in case and defended insured.

3. Terms of indemnity policy cannot be enlarged or diminished
by judicial construction.

4. Under policy insuring automobile company for injuries from
car used by company, its agents or employes while in
service of company, or using car with company's express
or implied permission, question whether employe was
driving with company's permission was question of fact.

5. As respects indemnity policy, where employe, driving
master's car, deviated from route on business of his own,
without master's knowledge, master cannot be said to
have acquiesced in use of car, or to have impliedly per-
mitted him to use same while he was on own business.

6. In action for injuries from operation of automobile driven ·
by employe against employer's insurer, evidence of
whether employe had employer's permission to drive car
*held* insufficient for jury.

7. Where employe, driving car, deviated from route on busi-
ness of his own, without permission of employer, em-
ployer's insurer was not liable for injuries sustained while
employe was on own business.

(Decided April 18, 1927.)

Error: Court of Appeals for Cuyahoga county.

*Messrs. Bernsteen & Bernsteen,* for plaintiff in
error.

*Messrs. Dustin, McKeehan, Merrick, Arter &
Stewart,* and *Mr. J. H. McNeal,* for defendants in
error.

Vickery, J. This action comes into this court on
a petition in error to the common pleas court of
Cuyahoga county.

In the court below Denny brought his action
against the defendants Daniel Lish and the Royal
Indemnity Company of New York to recover from
the indemnity company a judgment of $15,000,
which he had obtained against Daniel Lish in a
former action, the plaintiff having been unable to
collect the judgment from Lish.

At the trial of the action, at the conclusion of
the plaintiff's testimony, the court, upon motion,
directed a verdict for the defendant. A motion
for a new trial was made and overruled, and error
was prosecuted to this court, it being claimed that
the court erred in granting the motion of the de-
fendant for judgment at the conclusion of plain-
tiff's testimony, and also in overruling a motion
for a new trial, which, in effect, amounted to the
same thing.

The importance of this case must be evident to

all, and we therefore have given it the consideration to which it is entitled under the circumstances. In order to understand the grounds upon which the right to recover was predicated by plaintiff, we must advert to the first trial and find out what the facts were in that case, because it must be remembered that the indemnity company was not a party to the original suit, and that it therefore cannot be *res judicata* as to that company, although there is something claimed from the fact that the attorneys for the surety company defended in the lawsuit below, but we will revert to that hereafter.

It seems that Lish was an agent or employe of the Cleveland Cadillac Company, an automobile sales agency located at Twentieth street and Euclid avenue; that as such automobile sales agency the Cadillac Company had a policy of insurance which included it and the agencies at Toledo, Sandusky, Columbus, Canton, and perhaps other places. The policy was a uniform form of indemnity policy, but a clause in the body of the policy excluded liability for any automobile sales agency entirely; yet a rider was attached to the policy, and became a part of it, which provided for how the liability would arise, who might use the car, and under what circumstances the liability company would be liable for damages. Now it seems from the record that Lish, as already stated, being an employe of the company, had a duty to perform each day, and that was to take a car of the Cadillac Company with the mail of the company to the post office down on the Square, then to go to the C. & B. docks, and then to drive back to the place of business of the Cadillac Company. Those were his duties as agent or employe of the company.

On the morning in question he took the car to perform the duties above outlined, but, instead of doing so, he went east to Sixty-Ninth street, where he wanted to see his mother and do some work or business for himself, and it was while out on his own business, for which he had no permission of the company to use the car, either express or implied, that the injury was occasioned by Lish to Denny, plaintiff in the action below.

The manner in which this accident occurred, as shown by the evidence and judgment of the court, created a liability of Lish to respond in damages: A suit was brought by Denny in the common pleas court of this county, making Lish and the Cleveland Cadillac Company parties to the suit. During the trial of the action, or perhaps before, on motion or otherwise, the Cadillac Company was dismissed from the suit, and a judgment was entered in its favor, to which finding or judgment no error was prosecuted, and, so far as appears in this action, the court below acted finally, and determined that Denny had no right or claim against the Cleveland Cadillac Company. This could only be upon the theory that Lish was not on his master's business at the time of the occurrence of this accident, and from the statement of facts as we get it, there could be no question from the authorities, and from the opinions of this court, that the doctrine of *respondeat superior* did not apply, because Lish was not on his master's business at the time of the accident.

On trial of that suit, however, the indemnity company, who wrote this policy of indemnity to the Cadillac Company, sent its lawyers, and they defended the action, and it is argued very strenuously

that, whether there was any liability or not, the action of the liability company in sending its lawyers to defend the action against the insured was tantamount to an admission that it was liable, and that it is now estopped from asserting that it is not responsible. We do not think that any such conclusion could be safely arrived at. It would be a dangerous doctrine to hold an insurance company estopped from disputing its liability simply because its attorneys—who perhaps by provision of the contract itself must defend the insured whether the claim prosecuted against it is a valid claim or otherwise—appeared on trial of the action. I say it would be rather singular if the appearance of the attorneys under such conditions would thereafter prevent the liability company from defending, if it were sued, under a claim that this entrance of the attorneys in the case was equivalent to the acknowledgment of a claim, a valid claim, against the company. We do not think that any such conclusion can be safely arrived at.

The terms of the policy cannot be enlarged or diminished by judicial construction. It is true there is a line of authorities to the effect that, if there is anything ambiguous in the contract of insurance, it shall be strongly construed against the insurance company, because it is a contract drafted by its lawyers, and therefore, if there is any doubt as to the meaning of the policy, it should be construed in favor of its effectiveness rather than destroy its efficacy. But, looking at the terms of this policy, particularly that of the rider, who was insured? Why, manifestly the Cleveland Cadillac Company, and the liability company insured the Cadillac Company, and the liability company be-

came liable whenever any injury was done by a
car when used by the Cadillac Company, its agents
or employes, while in the service of that company,
and perhaps any person that was using its car
with its permission, either express or implied. Now
the question in this case is a question of fact. When
Lish took this car from the Cadillac Company's
building at the corner of Euclid avenue and Twen-
tieth street, he took it as an employe of the com-
pany for a distinct purpose, namely, to take the
mail of the company to the post office, to then go to
the C. & B. docks, and to then return to the build-
ing. Instead of doing that, he proceeded eastward
a couple of miles out of his way to carry on business
of his own, and, while doing so, the injury occurred
for which the suit was brought.

As we have already said, it is manifest that the
Cadillac Company would not be responsible, and
it must have been on that theory that it was dis-
missed from the case in the court below.

Did Lish then have permission? There is not
a word in the record to indicate that the company
knew at all that he was using this car in his own
behalf. They did not even know that he was using
it. It therefore cannot be said that they acquiesced
in the use of the car, and that they gave him per-
mission impliedly. We say the record is absolutely
silent on the question of permission to use the car,
as it must be remembered that, instead of using the
car to deliver the mail to the post office, and to
go to the C. & B. docks, he used it to go out on
business of his own. While going from Twentieth
street to Sixty-Ninth street he was using the car
entirely without the permission of the Cadillac
Company, as far as the record is concerned, either

expressly or impliedly. We are not saying that, if he was pursuing his way to the post office, even if he was going in a roundabout way, if that was his ultimate object, there might not be a liability on the part of the Cadillac Company, and hence on the part of the liability company. That, however, does not appear in the record. The contrary appears, namely, that he visited his mother on his own business, which was at Sixty-Ninth street and Cedar avenue, a street parallel with Euclid, two blocks south. In all human probability, when he got through with his business at Sixty-Ninth and Cedar, he passed the very place where he was employed. However that might be, from the time that he proceeded east he ceased to be in the line of his business, acting for his employer, nor was he using the car with its permission. We think this is decisive of the case.

Our attention has been called to two cases practically similar to the one at bar, and we have been told by diligent counsel that these are the only two cases that they could find bearing upon this subject.

In *Dickinson, Adm'r., v. Maryland Casualty Co.,* 101 Conn., 369, 125 A., 866, 41 A. L. R., 500, it was held, under circumstances somewhat similar to those in the instant case, that a recovery should be had; but from an examination of that case— and we have read it entirely—it will be discovered that in that case the man who drove the car had permission to use the car in his own business, to go home to change his clothes, from an adult brother of the driver of the car, who was insured by the casualty company. It seems that he asked his brother whether he could take it—a Westcott—and

go to his home to change his clothes, and that the brother told him he might. He thereupon took it, and on his way home he stopped in a saloon and there apparently had some drinks, and found some friends that he invited to ride with him, and he was to take one home, which he did, and, returning on his way to his own home to change his clothes, still in a roundabout way, the car skidded into a tree, and one of the men who was riding with him as a guest was killed. The administrator of the deceased person brought an action against the driver of the car, and recovered a judgment against the driver of the car, and was unable to collect the judgment, and the action was then brought against the Casualty Company. The Supreme Court of Connecticut held that under such circumstances, in using the car with the permission of the owner's brother, even though in a circuitous way, he was still using the car under the permission that was granted to him, and rendered judgment in favor of the plaintiff against the casualty company. However, it is interesting to note that two of the judges dissented from the opinion, as establishing a dangerous precedent, so the decision, while by a majority of the court, still lacks the authority it would have if it were a unanimous decision, and, when the court is divided three to two, the case cannot be cited as conclusive authority.

However, if the Connecticut court had not been divided on that proposition, we think the facts in that case are clearly distinguishable from the facts in the instant case, in the manner we have already pointed out.

The other case that was called to our attention is *Whitney* v. *Employers' Indemnity Corporation,*

decided February 17, 1925, reported in 200 Iowa, 25, 202 N. W., 236, and 41 A. L. R., 495. In this case it seems that one Fenlon, who was driving the car when the injury occurred, was employed by a firm of grocers, and his duties called for the use of the car, so the company bought a car for his use, the one in question, and sold it to him on a conditional sale contract, and the company was to deduct from his pay $50 each month until the sum of $600 and some odd dollars was paid, when he was to have title to the car. This arrangement went on for some time, and the appointment of Fenlon with the grocery company was terminated, whereupon an arrangement was made whereby Fenlon took the car and was to pay the balance of money for it. While affairs were in this condition, and perhaps before the car was fully paid for, it was held in that case, although the car was one of those covered by the indemnity corporation, that the grocery company had lost all interest in the car, and the defendant was not driving it with its permission, either express or implied, and that because of that fact there was no liability upon the surety company to indemnify Fenlon, a judgment having been rendered against him.

The form of policy was much like the one in question in the instant case. It all turned upon the question of the permission of Fenlon to use this car, and the court said in its opinion that, inasmuch as the grocery company had no ownership in the car, no interest in the car, it could not give permission to Fenlon, who owned the car, and that therefore the man who was injured by Fenlon and obtained a judgment against Fenlon could not hold the indemnity corporation responsible.

Now, from these two authorities, it must appear that in the instant case the plaintiff is not entitled to recover for the reason already alluded to that is given in these two cases. In the Iowa case, no permission having been given, there was no liability, because the car was not owned by the grocery company, and in the Connecticut case liability attached, because permission was given, so the question of permission is the paramount question. It is a question of fact, and in the instant case there is nothing in the record, as already said, to show that Lish had permission to use this car.

The judgment, therefore, will be affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and LEVINE, J., concur.