## United States Fidelity & Guaranty Company v. Hall.

### (Two Cases.)

(Decided February 13, 1931.)

HITE H. HUFFAKER, W. W. DOWNING and JOHN R. MOREMAN for appellant.

LUKINS & JONES and HARRY D. FRANCE for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

These two suits were tried together in the court below and the appellee Anna Lee Hall recovered a judgment for $2,202, and the appellee Thelma Hall one for $845 against the United States Fidelity & Guaranty Company. The company has appealed.

On August 28, 1926, the appellant issued to Mrs. Delia Bannon a policy of automobile liability insurance covering a Chevrolet sedan owned by her. Pertinent provisions of the policy are these:

"Omnibus Coverage.

"To extend the insurance provided by this policy so as to be available, in the same manner and under the same conditions as it is available to the named Assured, to any person or persons while riding in or legally operating any of the automobiles covered hereunder, and to any person, firm or corporation legally responsible for the operation thereof (excepting always a public garage, automobile repair shop and/or sales agency and/or service station and agents and employees thereof), provided such use or operation is with the permission of the named Assured; or, if the named Assured is an individual, with the permission of an adult member of the named Assured's household other than a chauffeur or a domestic servant. In no event shall the extension of insurance provided in the foregoing clause be construed to cover the purchaser of the automobile or automobiles covered by this policy, if sold, or the transferee or assignee of this policy except by the written consent of the Company endorsed hereon."

"Insolvency Provision.

"The insolvency or bankruptcy of the Assured hereunder shall not release the Company from the payment of damages for injuries sustained or loss occasioned during the life of this policy, and in case execution against the assured is returned unsatisfied because of such insolvency or bankruptcy in an action brought by the injured or his or her personal representative in case death results from the accident, then an action may be maintained by the in-

jured person or his or her representative against the Company under the terms of the policy for the amount of the judgment in the said action, not exceeding the amount of the policy.''

Mrs. Delia Bannon lived with her only son, Edward F. Bannon, who was an adult 30 years of age. There were no other members of the household. The son purchased and paid for the automobile, but the title was taken in the name of the mother. Mrs. Bannon could not drive the automobile, and when she desired to use it her son always drove it. On March 9, 1927, Edward F. Bannon, who was engaged in business in the city of Louisville, employed in his office the appellee Anna Lee Hall. He had no typewriter in the office, and Miss Hall suggested to him that she had a typewriter at her home which he could use. In the evening of that day Mrs. Bannon, at her son's request, permitted him to use her automobile for the purpose of going to the Kosair Hotel in Louisville to see a friend on business. She requested him to return by 8 or 8:30 o'clock and take her to the home of her sister-in-law. He took the car, went to his place of business on Walnut street in Louisville, then to the Kosair Hotel where he met Edward Treman. In the meantime he had met James O'Leary and had invited him to accompany him. From the hotel he telephoned the appellees and arranged to visit their home, as he claims, for the purpose of obtaining the typewriter and taking it to his office. From their home the three men accompanied by appellees went to a road house located on the Bardstown road beyond the city limits where they remained until about 1 o'clock in the morning of March 10. On their return to the city the automobile in which they were riding, and which was driven by Bannon, collided with a street car, and the appellees were injured.

They filed suits in the Jefferson circuit court against Mrs. Delia Bannon, the Louisville Railway Company, and Edward F. Bannon, in which they sought to recover damages for the injuries received as a result of the collision. At the trial the court peremptorily instructed the jury to find for the defendant, Mrs. Delia Bannon, and the jury by its verdict found for the defendant Louisville Railway Company, but returned a verdict against the defendant Edward F. Bannon, in favor of each of the plaintiffs for the sums above stated. Executions

were issued on the judgments entered on the verdicts, and the sheriff returned them, "No property found."

Thereafter these suits were filed against the United States Fidelity & Guaranty Company to recover the amounts of the judgments appellees had obtained against Edward F. Bannon, son of Mrs. Delia Bannon, the assured. The suits are predicated upon the theory that at the time of the accident in which appellees were injured the driver, Edward F. Bannon, operating the automobile of Mrs. Bannon, which was covered by the policy, was entitled to the protection of the policy under the omnibus coverage clause, and, the executions on the judgments obtained against him having been returned, "No property found," they were entitled to recover the amounts of the judgments from the insurer.

The defense interposed is that at the time of the accident and injuries Edward F. Bannon was not operating the automobile with the permission of his mother, and therefore that the omnibus coverage clause of the policy does not apply. The lower court held as a matter of law that at the time appellees were injured Edward F. Bannon was operating the automobile within the provisions of the omnibus coverage clause of the policy, and that the insurance provided by the policy was extended to him.

In appellant's brief it is suggested that the court's rulings in the two trials below are inconsistent, in that Mrs. Bannon, the assured, was awarded a peremptory instruction in the first trial because her son was not operating the automobile with her permission and the "family purpose" doctrine was not applicable, while in the second trial on the same evidence, the court ruled that the son was operating the automobile with his mother's permission. The precise reason for the court's ruling in each instance does not appear in the record before us, but the rulings are not necessarily inconsistent. The son was using the automobile admittedly on his on business, and under no theory of the case was the owner liable. The son was an adult, and under the recently decided cases of Bradley v. Schmidt, 223 Ky. 784, 4 S. W. (2d) 703, 57 A. L. R. 1100; and Creaghead v. Hafele's Adm'r, 236 Ky. 250, 32 S. W. (2d) 997, the "family purpose" doctrine did not apply, even though the son was operating the automobile with his mother's permission.

It is appellant's contention that Edward F. Bannon at the time of the accident was not operating the automobile with the permission of his mother, but that he had substantially deviated from the purpose for which he had obtained permission to use it and therefore was no longer insured. It relies on the cases of Frederiksen v. Employers' Liability Assurance Corporation, Ltd., of London, England ('C. C. A.) 26 F. (2d) 76; Denny v. Royal Indemnity Company, 26 Ohio App. 566, 159 N. E. 107; and Trotter v. Union Indemnity Company (C. C. A.) 35 F. (2d) 104, where provisions in policies similar to the omnibus clause above set out were construed. In each of these cases the assured permitted a third person to use his car for a specified purpose. In each case the court held that the insurer, by reason of a substantial deviation from the permitted use, was not liable for injury to the driver, his guests, or others. Dickinson v. Maryland Casualty Company, 101 Conn. 369, 125 A. 866, 41 A. L. R. 500, Stovall v. New York Indemnity Company, 157 Tenn. 301, 8 S. W. (2d) 473, and Odden v. Union Indemnity Company (Wash.) 286 P. 59; Lahti v. Southwestern Automobile Ins. Co. (Cal. App.) 292 P. 527, seem to announce a different rule, but in none of these cases was the driver of the automobile an adult member of the assured's household, and therefore they shed little light on the issue presented by the facts of this case.

In the instant case the driver was one, who, by the terms of the policy, could grant permission to a third person to use the car. The policy does not expressly insure adult members of the assured's household, but it includes them by implication. If an adult member of the household, other than a chauffeur or a domestic servant, could grant permission to a third person to operate the assured's automobile, and thus extend the insurance so as to be available to such person, surely it was contemplated that he would be an assured under the policy when operating the car. It was not necessary for Edward F. Bannon to obtain the consent of his mother to use the automobile in order to bring him within the omnibus clause of the policy. It would be the barest legalistic sophistry to argue that he could grant permission to others to use the car and bring them within the protection of the policy and yet could not use the car himself without the express permission of his mother and be protected. The purpose of this policy was not only to protect the named assured, but also to protect all adult members of assured's household.

398

It is insisted that he was expressly forbidden by his mother to use the car for any purpose other than to drive it to the Kosair Hotel and return for her at 8 or 8:30 o'clock, which he failed to do, but we do not so understand the evidence. It is true he testified that he always obtained his mother's permission to use the car, and that she testified she always granted him permission to use it for business purposes. It nowhere appears, however, that she had expressly forbidden him to use it without first obtaining her consent, and the mere fact that he failed on the occasion in question to return to his mother's home and drive her to the home of her sister-in-law was not such a departure from the permitted use as brings the case within the rule contended for by appellant. Had he returned, as requested by his mother, and taken her to the home of her sister-in-law, he, being an adult member of her household, could then have used the car without her permission for his own purposes, and, under the omnibus coverage clause of the policy, he would have been protected.

There being no evidence tending to show that his mother had expressly forbidden him to use the car except when permitted to do so, we are not called upon to determine what the result would be if such a state of facts had been presented. It is argued that the only issue presented by the pleadings is whether or not Bannon was operating the car with his mother's permission, but the petition in each case alleges that by the terms of the omnibus coverage clause of the policy the insurance was extended so as to be available to him.

We conclude that the ruling of the trial court was correct, and the judgment is affirmed.