## UNITED STATES FIDELITY & GUARANTY CO. v. MANN.
### No. 3680.

Circuit Court of Appeals, Fourth Circuit.

Nov. 19, 1934.

Harold A. Mouzon and J. Waties Waring, both of Charleston, S. C. (Huger, Wilbur, Miller & Mouzon, of Charleston, S. C., on the brief), for appellant.

Robert McC. Figg, Jr., and John I. Cosgrove, both of Charleston, S. C., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

This action at law was brought by the administrator of the estate of Mrs. Alice W. Mann, deceased, to collect the sum of $10,-000 from the United States Fidelity & Guaranty Company, on a policy of indemnity insurance, wherein the company had agreed with the city of Charleston, S. C., Park Department, to pay all sums which the assured should become liable to pay as damages imposed upon it by law for bodily injury accidentally sustained by any person, if caused by the maintenance or use of an automobile described in the policy. The car belonged to the city and had been furnished to W. Moultrie Ball, Superintendent of Parks, for use in the performance of the business of his office; and it was kept by him, when not in' use, in a garage nearby a residence provided for him by the city in one of the parks a mile and a half from the center of the town.

On March 2, 1931, at 6 o'clock in the afternoon, the superintendent and his son, W. M. Ball, Jr., also an employee in the Park Department, were at their home. The father directed his son to take the car and go downtown and bring home his mother, who was paying a social visit in the city. On his way, the son unfortunately ran into Mrs. Mann and inflicted severe injuries upon her. She brought suit against him and the city in the court of common pleas for Charleston county, and secured a verdict against him for $30,-000; but it was decided that the city was not liable for the accident, on the authority of Reeves v. City of Easley, 167 S. C. 231, 166 S. E. 120, in which it was held that a municipality in South Carolina has no liability for a tort of this kind. The injured woman subsequently died, and her administrator, being unable to recover anything on the judgment against the son, brought the pending suit.

The contention was successfully made in the District Court that although the city, the named assured in the policy, was not liable for the wrong done, the insured was liable under the broad terms of the so-called omnibus

coverage clause; and the decision on this point presents the only substantial question for review in this court. The clause in question contains the following relevant provisions: "The unqualified word 'Assured' includes not only the Named Assured but any other person or organization while legally using any such automobile, including also any other person or organization legally responsible for the use thereof, provided the disclosed and actual use of such automobile is 'Pleasure and Business,' or 'Commercial,' each as defined herein, and further provided that such use is with the permission of the Named Assured."

The term "pleasure and business" is defined in the policy as "personal, pleasure and family use, including business calls."

It is not and cannot be disputed that in order to bring the case within the coverage of the policy, it is necessary to show that the use of the car for the convenience of the wife of the superintendent at the time of the accident was "with the permission of the Named Assured." If the superintendent had the authority from the assured to give his son permission to make such use of the car, then the requirements of the clause were satisfied; but the uncontradicted evidence discloses circumstances that appear to us incompatible with such a conclusion. Section 98 of the Revised Ordinances of the City of Charleston of 1919, in force throughout the tenure of the superintendent, contains the following provision: "Sec. 98. City automobiles and other vehicles to be used only for official business—That automobiles, motorcycles, trucks, engines and other vehicles are provided to facilitate the work of the department and to attend to public business and are not to be used for any other purpose."

Moreover, the Ways and Means Committee of the City Council, which makes appropriations for the city and has charge of its financial affairs, had taken action in regard to the use of the very car with which we are concerned in this case. This committee had authorized the purchase of the car for the superintendent's use. The minutes of a meeting of the committee of March 1, 1929, contain the following statement: "The Chairman reported that Superintendent Ball's automobile was registering too high mileage in gas consumption on account of his son using the machine. So as not to give offence to Mr. Ball the Clerk was instructed to write all departments that the city automobiles should not be used for private purposes nor should gas be drawn except for official use."

Pursuant to these instructions, the clerk of the council, on March 25, 1929, sent to the heads of the various departments a letter in which they were instructed, under the authority of the committee, that city-owned automobiles were to be used for *official business only*, and that the driving of cars by other than authorized departmental attaches was prohibited. Strict observance of these regulations was enjoined, and the heads of departments were directed to enforce the ordinance and extend the order throughout their departments.

This ordinance and these official instructions, it is conceded, were in force at the time of the accident; but the contention is nevertheless made that permission for the use of the car by the superintendent's son had been given, in the contemplation of the policy. It is pointed out that Ball, Jr., was an employee of the Park Department, subject to the orders of the superintendent, and had been directed by the superintendent to use the car. Since he was merely doing what he was employed by the city to do, it is said that the city's consent must be implied regardless of what use the superintendent was making of the car. It is urged that the son was not within the prohibition either of the ordinance or of the instructions of the committee of the council, because he was not making a use of the car personal to himself, but was driving it as a departmental attaché; and that therefore he was covered by the policy. It is suggested that perhaps the argument would not hold if the father had been driving the car himself. This reasoning needs only to be stated to be exposed, for the son was employed to attend to the city's business, and not to the affairs of the family; and the father could not authorize another to do for him what he could not do for himself. One cannot give the permission of the named assured to use the car, under the terms of the coverage clause, unless the authority to do so has been conferred upon him.

Next, it is contended that the superintendent had been authorized to use the car himself for private purposes, by reason of circumstances surrounding his employment He was given not only a salary for his services, but also a home for his family, the use of the car, and a garage on the premises. There was also evidence to show that when he was appointed, he was not instructed not to use the car for private purposes, and that he had continually made such use of it without objection from the beginning, both before and after the letter from the clerk of the council had been sent out. Hence it is con-

tended that the right to use the car became part of the arrangement between the superintendent and the city, and the authority to permit the use of the car by the son was conferred. There was, however, no evidence tending to show that the superintendent was given the use of the car for private purposes, as part of his compensation, or that any person in authority knew that he was making such use of the car after his employment began. On the contrary, the chairman of the Board of Parks and Playgrounds testified, without contradiction, that the car was turned over to the superintendent for the general work of the Park Department; that the board never gave him permission to use the car for private or family purposes, and that he forwarded the letter of the clerk of the council to the superintendent, and personally spoke to him about it; and, finally, that he did not know that the car was being used for anything other than public purposes after the transmission of the clerk's letter; otherwise he would have stopped it.

We have been referred to no statute of the state of South Carolina or ordinance of the city council of Charleston, or decision of the state courts, which shows that the city officials, who appointed the superintendent and fixed his salary, had the right to suspend, as to him, the operation of the city ordinance. The general rule is to the contrary. McQuillin on Municipal Corporations (2d Ed.) vol. 2, § 705. But even if we assume the existence of such a power or authority, it is clear that there was no attempt to exercise it in this case.

It is also suggested that if the policy is not construed to cover the use of the car for family purposes, the language of the policy, referring to "personal, pleasure and family use," would not be given full effect, and the insurer would be paid for protection that it did not furnish. We find this suggestion also to be without weight. There is no evidence that an additional premium was paid for the coverage of the private use of the automobile, as well as for use in the work of the city; and it is conceivable that the parties may have contemplated that the ordinance would be repealed or amended during the life of the policy. In any event, it would be unreasonable to give force and effect to an irrelevant provision of a policy, merely because of its presence in a printed form prepared to cover not only the insurance provided for the city, but also all insurance of a certain class which the company might be called upon to write.

The provisions of the ordinance of the city council, passed in the proper exercise of its discretion, must be given effect; and when this is done, there is a limitation upon the use of the city's cars and a specific denial, so far as private purposes are concerned, of that permission for their use, which is essential to the coverage of a person other than the named assured. Moreover, there was an ample field for the operation of the policy, as we have construed it, in its coverage of the use of cars for the purposes of the city. And there was the added reason for the purchase of such a policy by the city that under the law of the state, the municipality had no liability for torts committed by the drivers of its cars, even when employed in the city's business; and it was natural and proper that the city should desire to protect its citizens from injuries inflicted by the carelessness of its employees who should prove financially unable themselves to respond in damages.

The law applicable to the omnibus coverage clause is clear that it creates liability insurance not only for the benefit of the named assured, but also for the benefit of those who come within the clause and meet its requirements. The one essential requirement upon which the decision must turn in this case is that a person other than the named assured, in order to enjoy the protection provided by the policy, must show that his use of the automobile is with the permission of the named assured. After consideration of all of the circumstances and the arguments advanced by the appellee in this case, we have been forced to the conclusion that no permission or consent, expressed or implied, was given by the city, or by any one authorized to act in its behalf, to the use to which the car was put at the time of the accident. Having reached this result, we have no occasion to consider the question as to whether permission or consent given by the named assured to another person to use a car is sufficient to cover all subsequent uses to which it may be put, or whether, on the other hand, the permission or consent intended by the policy is one directed to the particular use in effect at the time the liability arises. Questions relating to the omnibus coverage clause in similar policies, and questions of deviation in the use of an automobile from that embraced in a permission to use it, have been considered in a number of recent cases, many of which are collected in the note to Stovall v. New York Indemnity

Co., 157 Tenn. 301, 8 S.W.(2d) 473, as reported in 72 A. L. R. 1375. See particularly Globe Indemnity Co. v. Nodlere (C. C. A.) 69 F.(2d) 955, where the evidence was held insufficient to support the conclusion that a city employee had implied authority to use a city automobile for his personal use. See, also, Maryland Casualty Co. v. Ronan (C. C. A.) 37 F.(2d) 449, 72 A. L. R. 1360; Trotter v. Union Indemnity Co. (C. C. A.) 35 F.(2d) 104, with which compare Odden v. Union Indemnity Co., 156 Wash. 10, 286 P. 59, 72 A. L. R. 1363; Frederiksen v. Employers' Liability Assur. Corp. (C. C. A.) 26 F.(2d) 76; Dickinson, Adm'r, v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A. L. R. 500; Peterson v. Maloney, 181 Minn. 437, 232 N. W. 790; Denny v. Indemnity Co., 26 Ohio App. 566, 159 N. E. 107; Kazdan v. Stein, 118 Ohio St. 217, 160 N. E. 704; United States F. & G. Co. v. Hall, 237 Ky. 393, 35 S.W.(2d) 550; Cypert v. Roberts, 169 Wash. 33, 13 P.(2d) 55.

The judgment of the District Court is reversed.