## LIBERTY MUT. INS. CO. v. STILSON

### . et al.

District Court, D. Minnesota,
Fifth Division.

March 2, 1940.

Stearns & McKasy, of St. Paul, Minn. (Harry S. Stearns, of St. Paul, Minn., and Fred C. Elston, of Duluth, Minn., of counsel), for plaintiff.

C. W. Stilson, of Duluth, Minn., in pro. per.

Homer Stilson, in pro. per.

O. J. Larson, of Duluth, Minn., for Lila Maki.

Donald A. Rock, of Superior, Wis., for Amy Miller.

JOYCE, District Judge.

On September 29, 1938, the defendant C. W. Stilson, a resident of Duluth, Minnesota, was the owner of a Buick automobile. He had theretofore and on or about the 22nd day of April, 1938, procured from the plaintiff company a policy of insurance containing among others the following provision as to those who were insured thereunder: "Definition of Insured. The unqualified word 'insured' wherever used in Coverages A and B and in other parts of this policy, when applicable to these coverages, includes not only the named insured but also any person while using the automobile and any person or organization legally responsible for the use thereof, provided that the declared and actual use of the automobile is 'pleasure and business' or 'commercial', each as defined herein, and provided further that the actual use is with the permission of the named insured * * *".

The defendant Homer Stilson is the son of C. W. Stilson and on the dates here involved lived with his father and was by him permitted to drive the said car in and about

the City of Duluth although insofar as the evidence discloses he never had permission from the father prior to September 27, 1938, to use the car outside of Duluth save on two occasions, one on a trip to Hibbing, Minnesota, some eighty miles from Duluth, the other to Winnipeg to visit relatives. On both occasions specific authority was obtained from the father to use the Buick car. On both such occasions Homer Stilson was accompanied by the defendant Lila Maki.

On Tuesday September 27, 1938, following a request made by the son some days before, and after some hesitation, C. W. Stilson consented to Homer's using the car for a trip to Minneapolis, Minnesota, to be made on Thursday September 29th for the purpose of affording Homer an opportunity to attend the Minnesota-Nebraska football game on the following Saturday. It was represented to the father that Miss Maki was also going to the game with him; that she had relatives or friends at Pine City, Minnesota, located en route to Minneapolis, where and with whom they would visit on Friday; and on the father's insistence that the car be back by Sunday noon following, the trip was so planned. C. W. Stilson had legal business at Cloquet, Minnesota, which was on the main highway to Minneapolis, and requested the son to stop there and care for the same en route, the son agreeing to execute this commission and being supplied by the father with such files as were necessary for looking after the item of business.

Much of the foregoing is directly corroborated by the testimony of William P. Harrison, an office associate of C. W. Stilson. The son left the father's law office Thursday morning, as the father thought to stop at Cloquet first, thence to go to Pine City, on to Minneapolis, and return. As a matter of fact, however, it was never Homer Stilson's intention to go to Minneapolis. He wanted the car on the date in question to drive defendant Maki and defendant Miller to Chicago and Lake Forest, Illinois, where they desired to spend their vacation, and it was because he was sure that the use of the car would be denied him for such a trip that he told his father the false story of the Minneapolis and Pine City plans. The next the father heard of the son was word of an accident near Linden station, Wisconsin, which was not on the Minneapolis route but was on the route to Chicago from Duluth, in which accident the car and its occupants, Homer Stilson and defendants Maki and Miller, were involved.

Following the recovery of the various parties from injuries received in the accident certain proceedings were instituted in state court in Wisconsin, and the case at bar was brought in the Fifth Division of this court at Duluth by the plaintiff herein against the various defendants above mentioned under the Federal Declaratory Judgment Act, Title 28, U.S.C.A., § 400, seeking a determination and declaration of the rights and status of the plaintiff under the contract of insurance with C. W. Stilson and praying a finding that C. W. Stilson is not liable to the defendants Miller or Maki, or either of them, on account of the accident.

It is the claim of the defendants Miller and Maki that Homer Stilson is an additional insured under the policy, first, because of the permission given to use the car on the proposed trip to Minneapolis from Duluth and return, and that having obtained such permission from the owner for pleasure purposes in the first place, the permission continued until and including the time of the accident. The defendants further urge that there was an implied consent and permission granted within the meaning of the coverage provision contained in the policy. The defendants C. W. Stilson and Homer Stilson in their separate answers ask the court to construe the policy and the meaning, force and effect of its terms and render a judgment in accordance therewith.

Answer to the question as to whether Homer Stilson is additionally insured under the terms of the C. W. Stilson policy will prove determinative of the liability of C. W. Stilson and this question makes necessary a finding as to whether Homer Stilson had the express or implied permission to use his father's car at the time of the accident.

The evidence shows that Homer Stilson knew from experience that it was necessary for him to obtain his father's permission to use the car outside of Duluth. The false story of the trip to Minneapolis for the football game and the stop at Pine City was concocted to deceive the father and did deceive him into granting permission to use the car for what he thought was the Minneapolis trip. Lila Maki had no relatives or friends at Pine City, and the complete deceit with which Homer Stilson acted is illustrated by his disconnecting the speedometer in Wisconsin en route to Chicago when it had registered 165 miles, the mileage to Minneapolis from Duluth. The round trip to Minneapolis would approximate 330 miles; the round trip to Chicago

approximated 1,000 miles. His motive was made clear when at that time he told the defendants Miller and Maki that he was disconnecting the speedometer so that his father would not learn he had not taken the car to Minneapolis. Thus by deliberately lying to his father Homer Stilson obtained permission of the insured to drive to a specific place on a specific mission.

The policy is to be construed in the light of the language it contains and I do not think there is any ambiguity in the language, "provided further that the actual use is with the permission of the named insured". This language limits the use of the automobile to a specific use permitted to be made of it at the time of the accident. If at that time permission is found to exist, coverage extends; otherwise not. In other words, had an accident occurred while Homer Stilson was going to or from Minneapolis pursuant to authority granted for that trip, then there could be little doubt that the coverage of the policy extended to Homer Stilson. The fact, however, is that he proceeded on a trip traveling a different and much longer route and for a different purpose than that for which the use of the car was authorized. See Indemnity Insurance Co. v. Sanders, 169 Okl. 378, 36 P.2d 271; Cypert v. Roberts, 169 Wash. 33, 13 P.2d 55; Denny v. Royal Indemnity Co. of New York, 26 Ohio App. 566, 159 N.E. 107.

Nor do the facts here permit of a consideration of the so-called "slight deviation" doctrine. As stated, Homer Stilson testified that he knew that his father would never let him take the car to Chicago. C. W. Stilson testified that had he known what the son contemplated he would never have permitted the automobile's use for the trip. Therefore, Homer Stilson possessed no authority from his father for the "actual use" to which he put the car. Express permission for a given purpose does not imply permission for all purposes. See Trotter v. Union Indemnity Co., 9 Cir., 35 F.2d 104; Frederiksen v. Employers' Liability Corp., 9 Cir., 26 F.2d 76. For a discussion of "actual use" see recent text-book Appleman on Automobile Liability Insurance, pages 110–116.

So far as I am able to learn the precise question here involved has not been decided by the Minnesota Supreme Court, though in interpreting the Minnesota Motor Vehicle Safety Responsibility Act the clause "with the consent of the owner" has been interpreted by the court to mean that liability exists only when the car is being operated within the scope of the consent given. The statute reads as follows: § 2720-104, Mason's Minnesota Statutes 1927, 1938 Supplement: "Motor vehicles operated with permission of owner.—Whenever any motor vehicle, after this Act becomes effective, shall be operated upon any public street or highway of this State, by any person other than the owner, with the consent of the owner express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

In the recent case of Ranthum v. Sterling Motor Co., 202 Minn. 209, 277 N.W. 547, 548, one Ferguson, a salesman of defendant company, obtained the consent of defendant to take one of its used cars to demonstrate to a prospective customer and then went on an errand of his own. On this errand an accident occurred and a suit was brought for recovery of damages for injuries sustained by Ferguson's negligence, which resulted in a judgment for defendant motor company. Plaintiff appealed and the order was affirmed by the Supreme Court. The court said in discussing the above-mentioned statute: "We have had occasion to consider this statute many times in recent months. It is now settled that the owner's consent to the use of his vehicle by another may be of a limited and restricted nature, and he is not responsible by virtue of the statute for the latter's negligence if the vehicle is used outside the limits of the consent given. Consent to the use must exist at the time and place the accident occurs. * * * The conclusion is inescapable that when the accident occurred, the car was being driven at a forbidden time and for a forbidden purpose. This defeats plaintiff's right to recover from the defendant. * * *"

The defendants rely on Peterson v. Maloney, 181 Minn. 437, 232 N.W. 790; Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368; and Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A.L.R. 500. These cases did not contain the same language in their respective policies as that here involved and it might be inferred that the language of the insurance policy now before the court was adopted to avoid the claimed ambiguity in these cases. I do not understand that the Minnesota court has ruled that in any case once permission is given for the use of the car, liability follows under the omnibus clause of the policy. Certainly no similarity

in factual situation exists between this case and those relied upon by the defendants. The Maloney case possessed no element of fraud or deceit and obviously implied authority to use the car existed when and for the purpose it was used. The Dickinson case involved a slight deviation only. Here a lie bottomed Homer's Stilson's permission to use the car. Consent to use being obtained by deceit, how with minds thus apart can consent be implied for permission to use the car?

The recent case of Roehrich v. Holt Motor Co., 201 Minn. 586, 277 N.W. 274, 276, was an action brought against the defendant motor company under the Minnesota statute above mentioned. In that case Kenneth Tapp, a 19 year old boy, represented himself as a prospective purchaser with funds sufficient to buy a car and claiming that he wanted to show the car to his father who was staying in a nearby hotel; that he would close the deal in the morning if his father approved. His representations were wholly false. He had no money; his father was not at a hotel nearby and he never intended to buy the car. He wanted the car for purposes of a joy ride. He met with an accident, killing plaintiff's intestate. Judgment was given defendant, plaintiff appealing, and the Minnesota court in affirming said:

"From what has been said, it must be plain that Kenneth did not accept or use the car for any such purpose as was within the scope of the consent given by the motor company. He did not intend to drive up to the hotel to get his father, nor to show the car to him. He had no intention of seeing his father at all, much less of taking him to defendant's place of business as a prospective purchaser. His sole objective was to engage in a joy ride with a bunch of gay youngsters. As a matter of fact, Kenneth was a converter of the car from the moment he entered it. The fraud perpetrated by him vitiated the alleged assent itself. There was no meeting of minds under the circumstances. How, then, could there be consent? If he had gone through with a sale of the car to another, could the purchaser claim title thereto superior to that of the motor company? 'The wrongful taking of possession of personal property, either by force or fraud, generally amounts to a conversion.' * * *

"Certainly no one will contend that he whose property has been stolen or converted is liable in damages to one who suffers harm by reason of the thief's or converter's negligent use of the property so obtained. So, too, it must be apparent here, where liability of the owner is dependent under the statute upon his 'consent' being given to the user, that essential element being absent, that there can be no liability on the owner's part."

 I conclude that this action is properly brought under the Declaratory Judgment Act; that an actual controversy exists and the question of coverage should be decided, and that no permission was given Homer Stilson by his father to use the car in question at the time of the accident. See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000; United States Fidelity & Guaranty v. Pierson et al., 8 Cir., 97 F.2d 560; Farm Bureau Mutual Automobile Ins. Co. v. Daniel et al., 4 Cir., 92 F.2d 838; Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321; Western Casualty & Surety Co. v. Beverforden, 8 Cir., 93 F.2d 166; Ohio Casualty Ins. Co. v. Gordon, 10 Cir., 95 F.2d 605.

Motions made on behalf of the defendants are denied and the prayer of the plaintiff's complaint granted.

Findings of fact and conclusions of law will be filed in conformity with the views herein expressed and this memorandum made a part thereof.

Exception is granted to all defendants.