## YORKSHIRE INDEMNITY CO. OF NEW YORK v. COLLIER.

### No. 10714.

United States Court of Appeals
Sixth Circuit.

Jan. 31, 1949.

---

James M. Graves, of Louisville, Ky. (Davis, Boehl, Viser & Marcus, James M. Graves and A. J. Deindoerfer, all of Louisville, Ky., on the brief), for appellant.

Edwin O. Davis, of Louisville, Ky. (Mahan, Davis & Mahan, of Louisville, Ky., and James A. Hall, of LaGrange, on the brief), for appellee.

Before HICKS, Chief Judge, and MARTIN and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

Thelma Collier sustained personal injuries while riding in an automobile driven by Edward C. Simons on a public highway in Oldham County, Kentucky. Three automobiles were involved in the accident, a detailed description of which will be found in Wilburn v. Simons et al. (Legg v. Simons), 302 Ky. 752, 196 S.W.2d 356. This reported case related to damage actions brought by Simons and Thelma Collier against Wilburn, Legg, and Warner Jones, Jr. The state trial court had directed a verdict in favor of the defendant Warner Jones; and jury verdicts had been returned against defendants Wilburn and Legg. On appeal, the judgments entered on the verdicts were reversed for erroneous instructions to the jury, and new trials were awarded.

Upon the second trial of the state court cases, the jury returned a verdict for $4,575 damages in favor of Thelma Collier, against Legg. An appropriate judgment was entered on the verdict of the jury; but the execution thereon was returned nulla bona.

The automobile driven by Legg at the time of the accident was the property of Warner Jones, Jr., who carried a liability insurance policy in the appellant insurance company. This policy contained a so-called omnibus clause: "The unqualified word 'insured' wherever used in coverages A and B and in other parts of this policy, when applicable to such coverages, includes the named insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured."

On allegation that Legg is insolvent, Thelma Collier instituted the instant action in the United States District Court for the Western District of Kentucky against the appellant insurer. The basis asserted is that, in the above-quoted omnibus clause, the policy of insurance issued to Warner Jones, Jr., extended its coverage to include the liability of Legg and provided in effect that, in the circumstances, the insurer would pay the judgment recovered against him by the appellee, Thelma Collier.

Legg, a colored man, had been working for several years as a farm hand in the employ of Warner Jones, Jr., on a stock farm where race horses were bred. His regular duties consisted in plowing, cutting and putting up hay, cultivating crops, tending live stock, and doing general farm work. He was not a customary chauffeur; but from time to time did, when instructed, use Jones' Packard car on errands, such as driving to the mail box at the entrance to the farm, or going to an outside garage to have the automobile supplied with gas. A former manager of the farm testified that Legg occasionally drove on the highway motor vehicles belonging to Jones. A witness living on an adjoining farm testified that Legg had several times driven a horse van from the Jones farm to Lexington.

Jones was in the Army and was stationed at Fort Knox, from which he was accustomed to come home, when possible, for week-ends. On the day of the accident, he instructed Legg to wash his Packard automobile, which he used in traveling back and forth to Fort Knox, take it to a designated garage about a mile and a half up the highway, "fill it up with gas, check the oil, and bring it back to the farm" by 5 o'clock, in time for the owner to return to camp. The car was to be washed on the

farm at one of the horse barns. Legg's instructions from Jones were to take the car at any time during the day that suited his convenience, but to bring it back by 5 o'clock in the afternoon.

After washing the car, Legg, accompanied by a girl friend whom he afterwards married, drove to the filling station and carried out the directions given him. He then decided to go up the road "for a little pleasure trip." He testified that he was going up the highway for a ride and "was going to turn around at the first convenient place." The accident happened at a point some four or five miles beyond the garage and filling station, on the Louisville-Cincinnati highway.

After all the evidence in the case had been received, the United States District Judge directed the jury to return a verdict for the plaintiff, Thelma Collier. In doing so, he explained to the jury that Legg had obtained permission from his employer to use the automobile, and that his deviation from his mission in riding up the highway with his girl "was not such an unwarranted or unusual use of the car" as would, in view of the omnibus clause, vitiate the coverage of the policy. In denying the motion of the defendant for judgment non obstante veredicto, the court declared that the case of Vezolles v. Home Indemnity Company of New York, D.C., 38 F.Supp. 455, 456, seemed decisive, and added: "Considering the purpose of the omnibus clause, as analyzed in the Vezolles case, it is apparent that the time employed by Tilmer Legg, after he left the gas station until the accident, was short. The short ride which he took after leaving the gas station in a direction opposite to the home of Warner Jones was not a material deviation, nor a material violation of the permission he had to use the automobile."

The Vezolles case, supra, upon which the district court relied, was decided by a member of this court, Judge Miller, then United States District Judge for Western Kentucky. In a carefully prepared opinion, the authorities were reviewed and their distinctive features analyzed. The insurance policy involved, as in the present case, required that "the actual use" of the automobile should be with the permission of the named insured. It was found on the facts that there was no material deviation from the contemplated use, and that the manner of use was not specifically forbidden by the owner. It was correctly stated to be well settled that permission to use a motor vehicle may be implied in the absence of express prohibition. The case was regarded as essentially different from three types relied upon by the insurer, namely: (1) cases where an implied permission to use the car at all was lacking; (2) cases where the owner had actually prohibited the use which was being made of the car at the time of the accident; and (3) cases where the use of the automobile was at a time so much later than the time at which permission was given, or at a place so far removed from the geographical limits of its contemplated use, as to be in reality a conversion by the operator. In these three types of cases, decisions denying liability under policies containing omnibus clauses were regarded as sound. But an owner's liability insurance policy containing an omnibus clause was held to cover "actual use" with the owner's permission, where the insured automobile owner, after a party in his home, authorized a guest in early morning hours to take a young lady guest to her home in the host's automobile and to return with the car for the purpose of being taken home himself, and where the automobile owner retired and locked up before the friend returned and, in these circumstances, the friend drove the automobile to his own home after stopping at a cafe for a drink and taking a short drive. It was held that the friend had implied permission to drive the automobile to his home and to use the car as he used it.

The opinion pointed out that liability under the omnibus clause is not to be governed by the law of agency, but rests upon permissive use. Judge Miller thus reasoned, with sound practicality: ."The purpose of the omnibus clause was to extend the coverage beyond the limitations which would otherwise exist under the law of principal and agent. Its addition to the usual terms of liability insurance policies was for the purpose of increasing the advantages of the policy being purchased, to provide additional coverage, and to be used

as a selling point in competition with other standard policies. To give it a construction which is closely parallel to the existing law of principal and agent would ignore the evident purpose of its being made a part of the policy. In my opinion the purpose of the omnibus clause was to extend the liability insurance coverage to a person other than the owner who had the possession and use of the car with the permission of the owner for a somewhat limited period of time, without arbitrary and definite restrictions as to just what could be or what could not be done with the car during that period of time. The time element during which the use is permitted by the owner is in my opinion the element to be stressed rather than the particular use to which the car is put, so long as the particular use does not vary materially from the contemplated or usual use of a car under similar conditions. The main purpose of the clause is to substitute the operator of the car for the owner of the car while the car is being operated with the permission of the owner. This purpose is not given effect to its normal and full extent if we adopt the limitations now urged upon us by the defendant." Vezolles v. Home Indemnity Co., D.C., 38 F.Supp. 455, 458, 459; affirmed, per curiam, 6 Cir., 128 F.2d 257–258. The same reasoning is certainly applicable here, where the facts are much stronger for the plaintiff than was true in the Vezolles case.

While the case at bar is, of course, governed by the law of Kentucky, it may be well to refer to two decisions of our own, which we think are not in conflict with the law of that state, and also to distinguish certain federal decisions cited by appellant.

In Caldwell v. Standard Accident Ins. Co., 6 Cir., 98 F.2d 364, 366, it was held that, where an automobile liability policy covered injury to any person other than the named assured while riding in an automobile operated with the assured's permission, the insurance company was not liable for an injury sustained by the occupant of the automobile while being operated by the assured's son, in violation of her express prohibition against taking the car out of town on the night of the accident. The opinion stressed the positive instructions of the assured mother to her son to go to a

picture show and to return home immediately after the show, and to go nowhere else. It was emphasized that the particular use of the car being made at the time of the accident was not only not specifically permitted, but was actually forbidden. This court said: "Since the use made of the car was prohibited, it was not used with the permission of the named assured, and the company is not liable under the policy." In the instant case, there were no inhibitive instructions given by Jones, the owner of the automobile, to Legg, the operator, against taking a short ride beyond the filling station.

Preferred Accident Ins. Co. v. Barker, 6 Cir., 104 F.2d 424, affirmed a judgment on an automobile liability policy, where Tennessee law governed, upon the authority of the opinion of that state's Supreme Court in Stovall v. New York Indemnity Company, 157 Tenn. 301, 8 S.W.2d 473, 474, 72 A.L.R. 1368. The case involved interpretation of an "omnibus clause" in a policy of insurance and presented a far greater deviation in the use of an automobile by an employee than is met in the instant case; yet the omnibus clause was held to cover the operator of the car at the time of the accident. But, inasmuch as the Tennessee law was controlling there and Kentucky law governs decision here, the case concededly is not authoritatively binding.

Trotter v. Union Indemnity Company, 9 Cir., 35 F.2d 104, is factually far afield. Several months prior to an accident, an insured automobile owner had turned his car over to a real estate commission agent for use in selling town lots owned by him. The commission agent, after quenching his thirst with intoxicating liquor, authorized his drinking companion to take the car from the garage late at night and use it for his pleasure. In such use, a third person was injured. It was held that the insurer was not liable under the omnibus clause in a liability policy insuring the automobile owner.

In Frederiksen v. Employers' Liability Assur. Corporation, Limited, of London, England, 9 Cir., 26 F.2d 76, the owner of an insured automobile loaned his car to a friend to go to an early morning funeral. After the funeral, the borrower and some

companions drove around Oakland, California, until about noon. They decided that it would be a pleasant afternoon and evening amusement to keep the car and drive to a town forty miles away. On their return trip, about 6 o'clock in the evening, there was a collision with another car. The Court of Appeals held that the borrower of the car was not using it with the owner's consent at the time and place of the accident, saying that permission to use an automobile to attend a funeral in the morning in the city in which the insured resides carries no permission to use it in the afternoon for a joy ride many miles beyond the city limits.

Johnson v. Maryland Casualty Co., D.C., 34 F.Supp. 870, is another case demonstrative of the truism that liquor and gasoline do not mix. An employee in possession of an automobile to be used in his company's business retained its possession and, after taking several drinks of beer in a tavern contrary to instructions forbidding employees while in possession of a company automobile to drink intoxicating liquor, met a lady friend in a tavern and invited her to have dinner at "Dreamland," another tavern located five miles outside the city limits. On his way to "Dreamland," he was rudely awakened by the actuality that he had caused an accident, upon which a subsequent action was based. The omnibus clause of the policy insuring the company's liability was held not to cover. The court said that it was undisputed that the named assured did not give its employee permission to use the automobile for the purpose for which he was using it at the time of the collision, but had, in fact, forbidden such use.

In Liberty Mutual Ins. Co. v. Stilson, D. C., 34 F.Supp. 885, an omnibus clause of a liability insurance policy was held not to cover an accident, where the son of the insured, knowing that his father would not permit him to use the father's automobile for travel from Duluth to Chicago, obtained permission to use the car by falsely representing that he wished to attend a football game at Minneapolis, started for Chicago instead, and caused an accident while enroute.

In this field of litigation pertaining to liability insurance policies which contain an omnibus clause, Globe Indemnity Co. v. Nodlere, 10 Cir., 69 F.2d 955, is another case of the forbidden use of an automobile. The Court of Appeals for the Tenth Circuit asserted that it had no quarrel with the doctrine of United States Fidelity & Guaranty Co. v. Hall, 237 Ky. 393, 35 S.W.2d 550, 551, which brings us to a discussion of the law of Kentucky, the controlling law of the case before us for adjudication.

In the last mentioned case, the owner of an automobile carried a liability policy which contained omnibus coverage. She lived with her thirty-year-old son, who had purchased and paid for the insured automobile, title to which had been taken in the name of the mother. One evening, the mother permitted the son to use her automobile for the purpose of going to a Louisville hotel to see a friend on business. She requested him to return by 8 or 8:30 o'clock to take her to the home of a relative. He took the car, went to his office, then to the hotel and joined up with friends. He telephoned a girl employed in his office and arranged to visit her home for the ostensible purpose of obtaining a typewriter to take to his office. The three men, however, picked up the girl employee and another girl at their home and drove to a roadhouse on the Bardstown Road beyond the city limits of Louisville, where they remained until about 1 o'clock in the morning. On their return to the city, the automobile in which they were riding collided with a street car; and both girls were injured. Both brought damage suits against the automobile owner, her son who was driving the car, and the street railway company. The mother was discharged from liability by peremptory instruction; and the jury returned a verdict for the street railway company and against the son for specified damages. The Sheriff having returned "No property found" on the executions of the two judgments, the injured girls then sued the insurance company to recover the amounts of the judgments which they had obtained against the son of the assured. Both were awarded judgments against the insurance company which were affirmed on

appeal. The Court of Appeals of Kentucky declared that it nowhere appeared that the mother had expressly forbidden the son's use of the car without first obtaining her consent, and that the mere fact that he failed on the occasion in question to return to her home and drive her to the home of her sister-in-law was not such a departure from permitted use as to avoid coverage under the insurance policy. United States Fidelity & Guaranty Co. v. Hall, 237 Ky. 393, 398, 35 S.W.2d 550.

The appellant insists that the opinion of the Court of Appeals of Kentucky in United States Fidelity & Guaranty Co. v. Brann, 297 Ky. 381, 180 S.W.2d 102, 104, is a determinative authority in its favor. We are constrained to disagree with the argument. In that case, the automobile indemnity policy involved contained an omnibus clause covering, not only the named insured, but also any person while using the automobile where "the actual use" is with the permission of the insured. The named insured, Hopper, was a groceryman in a small town in Kentucky. A young man named Gaylor worked for him as delivery boy. Gaylor was on intimate terms with his employer's family and occasionally slept and took his meals in their home, which was an apartment above the grocery store.

One Sunday morning, at Hopper's request, Gaylor took the insured truck and drove about town gathering up some young men to attend a Sunday School class taught by Hopper. After leaving the boys at the church, Gaylor put the car in its garage a short distance away, locked the door, and went back to attend the class. He kept the automobile keys in his pocket instead of putting them in the store where they were usually kept.

Gaylor had noonday dinner with the Hoppers. In the early afternoon, Hopper left home in his passenger car; and, during his absence, Gaylor took the truck, drove about town for a while with some other young men, and then went out of town three or four miles where he collided with an automobile in which Brann and others were riding. The injured occupants of the automobile brought damage suits against both Hopper and Gaylor, who, himself, was seriously injured. The actions were dismissed as to Hopper, but uncollectible judgments were rendered against Gaylor. Actions were then brought by the successful plaintiffs against the United States Fidelity & Guaranty Company, which had issued an indemnity insurance policy on the truck.

From judgments against it in those actions, the insurance company appealed and obtained reversals of the judgments. Both Hopper and Gaylor had testified that the latter had never previously used the automobile truck for his own purpose, either with or without the former's consent. The Court of Appeals of Kentucky declared that express permission to use the truck to take boys to Sunday School in the morning did not imply permission to use it in the afternoon for a joy ride, or for Gaylor's own pleasure at a different place. It was said that there was neither a general custom nor a course of conduct or circumstances shown to afford a basis for Gaylor's use of the motor vehicle in the afternoon of the day on which the accident occurred.

Apparently, the Kentucky appellate court approved the opinion in Vezolles v. Home Indemnity Co., supra, for that authority was twice cited: first to illustrate that the purpose of an "omnibus clause" is to extend policy coverage; and next to show that the Brann case was distinguishable, in that the action of the owner of the car in the Vezolles case in going to bed and not keeping his promise to drive the borrower home at an early hour in the morning, after the latter had used the car at the owner's suggestion, was a tacit consent that the borrower drive himself home. It will be remembered that, in driving home in a round-about way, the borrower occasioned an accident.

In the Brann case, the automobile had been returned to the garage of the owner after its authorized use had been completed; and, several hours later, without the knowledge or permission of the owner, the automobile was removed from the garage and taken by Gaylor on a pleasure mission not originally in contemplation. In the

Brann case, the truck was being actually used at the time of the accident without permission, while in the Vezolles case and the instant case the automobiles, at the time of the respective accidents, were being actually used with permission. In both the Vezolles case and the case at bar, the time element of permissive use broadly distinguishes them from the Brann case. Viewing the Brann case in its complete aspect, we consider it, as well as the Vezolles case, as authority under ·Kentucky law for affirmance of the judgment herein.

Accordingly, the judgment of the district court is affirmed.