## ZUVICH v. BALLAY et al.*
### No. 14388.

Court of Appeal of Louisiana.   Orleans.
June 29, 1933.

John C. Hollingsworth, of New Orleans, for appellants.

Prowell, McBride & Ray, of New Orleans, and Welton P. Mouton, of Lafayette, for appellee.

*Rehearing denied October 16, 1933.  Writ of certiorari denied November 27, 1933.

JANVIER, Judge.

Zuvich received injuries when he was struck by a Chevrolet automobile driven at the time by Joseph Paul Hingle, Jr., a minor.

The Chevrolet belonged to Lionel A. Ballay, also a minor, who had loaned it to Hingle.

Just before the Chevrolet struck Zuvich, it had passed a stationary disabled Nash car, striking it a slight, glancing blow as it passed.

The Nash belonged to Paul Ballieviero, and was in charge of his minor son, Norman Ballieviero.

Metropolitan Casualty Insurance Company of New York had issued to young Ballay, the owner of the Chevrolet, a policy of insurance under which it had agreed to indemnify and hold him harmless against all claims resulting from the negligent operation of his said Chevrolet, and the policy contained a provision for what is termed "omnibus coverage," under which the protection of the policy was made available "to any person * * * while * * * legally operating the said automobile * * * with the permission of the assured," etc. The same company had also issued to Paul Ballieviero, owner of the Nash car, a similar policy of liability insurance.

Plaintiff, Zuvich, seeks judgment against (1) Joseph Ballay, father of Lionel A. Ballay, owner of the Chevrolet; (2) Metropolitan Casualty Insurance Company as the insurer of Lionel A. Ballay, owner of the Chevrolet, and named as "assured" in one of the policies referred to; (3) Metropolitan Casualty Insurance Company as the insurer, under the omnibus clause, of Hingle, Jr., who is alleged to have been operating the Chevrolet with the permission of its owner; (4) Paul Ballieviero, father of the minor, Norman Ballieviero, who was in charge of the disabled Nash car, which said minor is alleged to have been at fault in several particulars; (5) Metropolitan Casualty Insurance Company, insurer in the policy of insurance issued to Paul Ballieviero. Neither Hingle, Jr., driver of the Chevrolet, nor his father, is made defendant.

The facts of the accident are in dispute only in one or two particulars.

Young Ballay and young Hingle were attending a dance near the town of Buras in this state. Hingle borrowed Ballay's Chevrolet to take to her home a young lady who was attending the dance with Hingle as his guest, or, as such a guest is now commonly known among young people, as his "date."

After taking the young lady home, Hingle returned to the scene of the dance, but, before entering, was informed that the train at Buras was about to depart, and that many of those at the dance would find it difficult to reach Buras in time to embark on the said train. He was prevailed upon to lend assistance, and seven young men, in addition to himself, thereupon crowded into and upon the Chevrolet and started for Buras. While on the way they noticed ahead of them a Nash automobile, which had backed out of a lane into the highway, and had then come to a stop at an angle partially blocking the highway. The front of the Nash was towards them, and its dim lights were turned on. As they approached the Nash, its bright lights were flashed on—though this is denied by Ballieviero—and Hingle, driving the Chevrolet, somewhat blinded by the lights of the Nash, in attempting to negotiate the narrow space between the edge of the roadway and the front of the Nash, struck the latter a slight, glancing blow, and a second or so later ran into young Zuvich, who was walking in the roadway a few feet beyond the Nash. Young Zuvich received severe injuries and another boy, Albert Cosse, Jr., who was riding on the running board of the Chevrolet, was jolted from his position when that car struck Zuvich, and he also received serious injuries, which form the basis of another suit. 149 So. 285.

In the district court there was judgment in favor of the plaintiff for $4,500 against the defendants Joseph Ballay and the Metropolitan Casualty Insurance Company of New York jointly and in solido. From that judgment the two defendants mentioned have appealed, and plaintiff has also appealed, contending that there should be judgment also against Paul Ballieviero.

It is charged that young Ballieviero, in charge of the Nash, was negligent, in that he allowed it to stand at an angle across the greater portion of the road, contrary to law, and in that he permitted the bright headlights of the Nash to be flashed on just as the Chevrolet was about to pass it, with the result that the driver of the Chevrolet was blinded, and it is also said that he was at fault in that one of the lights of the Nash was improperly adjusted and was permitted to throw its beam into the air in violation of law and to thus add to the blinding effect to which we have already referred.

It is also asserted that Lionel A. Ballay was at fault in that he permitted young Hingle to drive his car, knowing that at the time Hingle was "in a drunken condition."

In the petition we find no detailed charge of negligence against young Hingle, who, as we have stated, was not sued, but who was operating the Chevrolet, except that we do find a charge that he was in a drunken condition, which, let us say in passing, was not in any way borne out by the evidence. But the evidence with regard to the actions of young Hingle greatly enlarges the pleadings in this regard, and we reach the conclusion that he was at fault, and that that fault was responsible for the accident.

As he approached the Nash, which was at a standstill, and which partially blocked the road, he knew, or should have known, that

the passageway left for the Chevrolet which he was driving was so narrow that only skillful manipulation could negotiate that passage.

He also knew that the Chevrolet was occupied by eight persons, three in the front seat, three in the rumble seat, and one on each running board. He thus should have known that his own movements would, in an emergency, be hampered by the crowding of his associates.

He was at least 40 feet, according to his own statement, and from 200 to 400 feet, according to other witnesses, from the Nash when the bright headlights of the latter were flashed on, and in that distance he could have stopped or reduced the speed of the Chevrolet to a minimum, if he was to any appreciable extent blinded by the glare of the headlights of the Nash. He was at fault in attempting, without a substantial reduction in his speed, to pass that car, and in dashing into the darkness beyond at a rate of speed in excess of that which would have permitted of the stopping of the Chevrolet in the event of the sudden disclosure, after passing the Nash, of some one or something in the road ahead. He was only a short distance from the building in which a dance had been in progress only a few moments earlier, and which dance he had himself attended. He knew that the road which he was traversing must be used by those persons at the dance who found it necessary to go to the railroad depot to take the train for their respective homes, and he also knew that the road at that point was not bordered by sidewalks, and that persons walking on it could not escape, especially at night, since there was no shoulder or other safety zone in which, in an emergency, they might seek refuge. Young Hingle, then, was at fault.

■ Nor was Zuvich himself at fault. The record shows that he and several other boys were walking on the highway, which was customarily used by pedestrians, when suddenly the Chevrolet dashed by the Nash and bore down upon them. There was no place to which they could flee for certain safety. Some jumped into a drainage ditch bordering the road. Zuvich ran the other way, but could not escape, and was struck. He did not himself create the emergency. That he might have escaped had he run the other way is of no moment. He did what seemed to him best, and what he did was not manifestly negligent.

■ We next consider the charges of negligence against Ballieviero, who was in charge of the Nash, and who had permitted it to stop at an angle partially across the road, and who, it is charged, either flashed on his bright headlights, or permitted them to be flashed on, and thus to some extent interfered with the view of young Hingle.

Conceding that all that is said about his conduct is true, it is very evident, from the evidence, that the acts of negligence on his part, if they were acts of negligence, had no causal connection with the ultimate result. Conceding that the Nash partially obstructed the highway, and that, in this regard, young Ballieviero had violated section 26 of the State Highway Act (No. 296 of 1928), it is evident from the testimony of young Hingle and of those with him that they saw the position of the Nash and realized, when they were still some distance away, that only a very small passageway was left.

Therefore the negligence of Ballieviero in thus permitting his car to remain in that position became passive, when, as a result of the engine trouble, he could no longer move it, and that negligence cannot be said to have contributed to the final result.

■ The same may be said of Ballieviero's action in flashing on his bright lights. He denies that they were on, but we conclude from the record that either he, or the passenger in his car, did turn them on when the Chevrolet was approaching, and when it was yet somewhere between 40 and 200 feet away. Had the bright headlights been on all the time, there would certainly have been no fault in Ballieviero if those lights conformed to law, and whether they did conform to law we shall later discuss. Therefore we cannot see that the fact that they were turned on suddenly had any causal connection with the accident, since, after they were turned on, there remained ample time and ample distance for the driver of the on-coming car to have appreciated the danger and to have stopped or reduced his speed. If they had been turned on so unexpectedly and at so late a moment as to cause confusion to an approaching motorist when it was too late for him to stop, then the act of turning on the lights might be said to have had causal connection with a resulting accident, but such was not the case here. If the Nash had been parked in its proper position on the road, with its bright headlights burning and conformable to law, and if the Chevrolet had dashed past that car and its driver had not been able to see beyond the lights of the Nash, and had struck something or some one in the road beyond, then it is evident that the entire blame for such an accident would have been placed upon the shoulders of the driver of the Chevrolet. We are unable to distinguish such a case from the actual facts in this case, because here, as we have said, the driver of the Chevrolet fully realized the presence of the Nash, and had ample opportunity, after its lights were flashed on, to stop and make certain that it was safe to proceed.

■ We cannot conclude from the evidence that there was any substantial defect in the

headlights of the Nash car. In the record there is, so far as we can find, only one statement in regard to that defect, and that is made by young Ballieviero himself. He says, with reference to the lights, "There was one showing a little bit up in the air." Surely that evidence is not sufficient proof of such alleged defect to warrant a finding that that condition had anything to do with the accident.

We conclude, from an examination of the entire record, that the presence of the Nash and the condition of the headlights had no causal connection with the accident, and that the proximate cause thereof was the negligence of young Hingle, who, in driving the Chevrolet, misjudged the space through which he intended to pass and who drove into the darkness beyond the headlights of the Nash without making certain that it was safe for him to do so.

■ We find that there was no negligence in young Ballay in permitting Hingle to use the Chevrolet. It is shown that Hingle knew how to operate the car, and had borrowed it on several occasions. He was not under the influence of liquor, and there was nothing about his condition to indicate to Ballay that it would be dangerous to permit him to use it.

■ Since the accident resulted solely from the negligence of young Hingle, and since neither he nor his father is made defendant, there is presented a very interesting legal question:

"Does the omnibus clause in the policy of Ballay give to Zuvich, the injured person, the right to maintain an action directly against the insurance company?"

It must be remembered that Ballay is the owner of the Chevrolet, and that the policy of insurance was issued to him. He, as we have found, was in no way at fault. Yet it is sought to hold his insurer liable because of the negligence of the friend to whom he loaned the car. The policy unquestionably gives to that friend the same protection which it would have afforded Ballay had he been at fault. Therefore although he (Hingle) may have known nothing about the existence of the policy, nevertheless he was protected by it, and, had he been sued, could have called upon the insurance company to defend the suit and to pay such judgment as might have been rendered. He therefore was an "assured" as fully as though he himself had caused the policy to be written and had caused his own name to be inserted as "assured." If, then, Hingle was the assured and he (Hingle) was at fault, then, under Act No. 55 of 1930, the injured party, Zuvich, is within his rights in asserting his cause of action against the insurance company, because, in that act, it is provided that: "The

injured person * * * shall have a right of direct action against the insurer company * * * and said action may be brought either against the insurer company alone or against both the assured and the insurer company, jointly and in solido." (Section 2.)

■ Counsel for the insurance company contends that the omnibus clause of the policy has no application here because Hingle, at the time of the accident, was not, in truth, using the car with the permission of the owner. This contention results from the fact that, when Hingle borrowed the car, his primary purpose was to return to her home his friend or "date." But the evidence on that point leaves no doubt that Ballay had no intention of limiting Hingle's use of the car to that one mission and that he gave Hingle full permission to use it for such purposes as might suit his (Hingle's) convenience, requiring only that the car be brought back in sufficient time to permit Ballay to take his own "date" home.

■ Counsel also maintains that the omnibus clause cannot be interpreted so broadly as to afford protection to a borrower if the borrower is using the car entirely for his own purposes and, as supporting this view, he calls to our attention other provisions of the policy, which, he says, limit such coverage to cases in which the borrower is using the car for the business or pleasure of the owner. Those provisions read as follows: "This policy does not cover the liability of the assured * * * while any of the insured's automobiles are being used for other purposes than specified in the schedule of statements of this policy."

In the schedule of statements referred to, it is warranted that the automobile in question is to be used only for "pleasure and business."

The argument loses its weight when an examination is made of the provision referred to, and it is discovered that the use of the car in question is limited not to the business or pleasure of the owner, but to business or pleasure generally. Therefore a reading of this clause together with the omnibus clause leads to only one possible conclusion, and that is that the policy affords protection to any one who is lawfully and with the permission of the owner using the car, whether such use be for the business or pleasure of the owner, or for the business or pleasure of the borrower.

■ Counsel for defendants contends that there was reversible error in the action of the district judge in permitting counsel for plaintiff to place upon the witness stand, as under cross-examination, young Ballay and young Ballieviero. When these two young men were called as witnesses, counsel for defendants objected to their being placed on

the stand as opposing parties under Act No. 126 of 1908. His objections were overruled, the district judge being of the opinion that the two young men are really the parties defendant in the case,. and that it is only because they are minors that their fathers were necessarily made defendants under that provision of article 2318 of our Civil Code, which makes a father liable for the damage caused by the torts of his minor child residing with him.

After the two young men were examined under .the act of 1908, counsel for defendants then himself attempted to cross-examine them, but the district judge refused to permit cross-examination on the ground that they had been placed on the witness stand under the act referred to, and that, if counsel for defendant wished to examine them further, he must place them on the witness stand as his witnesses.

We find it unnecessary to discuss the question of whether or not, in such situation, minors whose faults form the basis of such an action as this and whose fathers are made defendants may be placed on the witness stand under cross-examination because a careful reading of the testimony given by the two young men convinces us that the evidence was of no great importance one way or the other, and that, even without that evidence, the conclusions to which we have come would have been amply justified by the other evidence in the record.

The testimony given by the medical men with reference to the injuries of Zuvich convinces us that the amount awarded below is excessive. He was injured on May 10th and remained under treatment until June 9th. His injuries were described as a "general contusion of the back, head—lacerated wound of the head—multiple lacerations over body and leg." He visited his doctor after June 9th only once, on December 7th. While there is some evidence to the effect that the injuries are permanent and that he will not be able to do manual labor, we believe that the evidence to the contrary preponderates. We also feel that the claim that there has been a separation of the sacrum and the ilium has not been substantiated; $3,000 is sufficient to compensate plaintiff for these injuries.

It is therefore ordered, adjudged, and decreed that the judgment appealed from, in so far as it runs against Joseph Ballay, be and it is annulled, avoided, and reversed, and that plaintiff's suit against the said Joseph Ballay be and it is dismissed, and that the judgment against the Metropolitan Casualty Insurance Company of New York be amended by reducing the amount thereof to $3,000, with legal interest from judicial demand; and that in all other respects the judgment appealed from be and it is affirmed.