ADDIE H. RHODES, Respondent, *v.* THE OCEAN ACCIDENT & GUARANTEE CORPORATION, LIMITED, Appellant.

GEORGE O. RHODES, Respondent, *v.* THE OCEAN ACCIDENT & GUARANTEE CORPORATION, LIMITED, Appellant.*

Fourth Department, September 20, 1933.

*Donovan & Raichle* [*Frank G. Raichle* and *J. C. Randal* of counsel], for the appellant.

*Nevins & Nevins* [*Henry P. Nevins* of counsel], for the respondents.

CROSBY, J. These two cases were tried at Special Term without a jury, and each plaintiff has recovered a verdict, Addie H. Rhodes for injuries personal to herself, and George O. Rhodes, her husband, for damages derived from his wife's injury. The insurance policy, under which the recoveries were had, is not printed in the record but the provisions thereof, which are material to the case, are

* Affd., 264 N. Y. ——.

set forth in the answer. The policy was issued by defendant to the Good Seed Co., Inc., as the named insured. William Rhodes, a cousin of plaintiff George O. Rhodes, was driving, and plaintiff Addie H. Rhodes was riding in the Good Seed Company's car at the time of the accident which caused Addie H. Rhodes' injury. William Rhodes was employed by the Good Seed Company to sell its merchandise, and was engaged in that business somewhere south of Washington, D. C., when he received a letter from his employer to wind up the season's business and drive to the home of the Good Seed Company at Fredonia, N. Y.

Arriving at Washington, William Rhodes had the choice of two routes commonly used in traveling from Washington to Fredonia, one some sixty or seventy miles longer than the other. There is a third route much longer than either of the other two which would take the driver far to the east, but eventually turned west through the Delaware Water Gap, and there is testimony that, for winter driving particularly, this third route was preferable to either of the other two. The accident happened on December 23, 1930. Under the circumstances, and on the record as we have it, we do not feel at liberty to disturb the 10th finding of fact to the effect that the Delaware Water Gap route " is a reasonably direct one."

As a matter of fact, William Rhodes took none of the three routes described, but followed a still more easterly route, directly to New York city, then up the Hudson river to Beacon, N. Y., where he visited a son, from whom he learned that the plaintiff Addie H. Rhodes had recently visited said son and had left word that she wanted to ride to Fredonia with William Rhodes when he came that way. So William Rhodes diverted still farther from any reasonable route between Washington and Fredonia and picked up Addie H. Rhodes at a town in northern New Jersey, and started for home. He drove to a point where he was on the so-called Delaware Water Gap route, and within about a mile thereafter the accident happened.

Judgments were recovered against William Rhodes, executions have been returned unsatisfied, and these actions are brought against the defendant insurance company. Plaintiffs claim that, however much William Rhodes had strayed away from his employment and his master's business, he was back on the job at the time of the accident and that the insurance policy covered the damages caused by his careless driving at the time, relying on such cases as *Schultze* v. *McGuire* (241 N. Y. 460); *Bloodgood* v. *Whitney* (235 id. 110) and *Riley* v. *Standard Oil Co.* (231 id. 301).

Under the rules laid down in those cases it may be conceded that William Rhodes, in view of the 10th finding of the trial court,

was engaged in his master's business at the time of the accident. But let us see whom defendant, by its policy, undertook to insure. It, of course, insured the Good Seed Company, described in the policy as the " named insured," but there has never been a recovery against the " named insured." On a former trial there was a nonsuit as to the Good Seed Company and a judgment in its favor entered on that nonsuit has never been reversed. But the policy provides that it protects, in addition to the named insured, " any person * * * entitled to insurance under the provisions and conditions of Insuring Agreement 7 hereof," etc. And insuring agreement No. 7 tells the whole story of whether or not plaintiff Addie H. Rhodes is within the field of coverage of the policy: " (7) The insurance granted by the foregoing provisions shall apply in the same manner and under the same conditions as it applies to the named Assured, to any person operating and/or to any other person while riding in and/or to any other person, firm or corporation legally responsible for the operation of, any motor vehicle described in said Declarations, or for whom said motor vehicle is being operated, *with the permission of the named Assured,*" etc. (Italics mine.)

It seems to me plaintiffs cannot recover on any theory. If it is sought to recover under the above-quoted provision of the policy they are barred by the fact that the policy insures only those " riding in [the car] with the permission of the named assured," and the 5th finding of the trial court's decision is (and it is amply supported by evidence): " That William Rhodes had received instructions not to use the automobile for any purpose other than company purposes." Furthermore, the following requests to find, made by defendant, were all found by the trial court:

" 11. The salesmen were instructed not to let anyone ride with them in the company's cars.

" 12. They were particularly instructed not to let their wives or other relatives ride with them."

" 26. The transportation of Addie H. Rhodes was in direct violation of the employer's instructions."

Nor does section 59 of the Vehicle and Traffic Law help plaintiffs out, for although we may concede that William Rhodes, at the time of the accident, was back on his proper route, so that he had reinstated himself in his master's employment, he was outside his employment in respect of inviting passengers to ride with him contrary to instructions. (*Goldberg* v. *Borden's Condensed Milk Co.,* 227 N. Y. 465; *Psota* v. *L. I. R. R. Co.,* 246 id. 388.)

It has been held that the purpose of section 109 of the Insurance

Law is neither to make auto liability insurance compulsory nor to prevent limitation of coverage. (*Brustein* v. *New Amsterdam Casualty Co.*, 255 N. Y. 137; *Lavine* v. *Indemnity Ins. Co.*, 260 id. 399.) And in the instant case the policy, by its terms, does not cover injury to persons riding in the Good Seed Company's car, unless with the permission of the owner.

Respondents urge one more point that must be considered, namely, that defendant proceeded with the defense of William Rhodes to a point where it is estopped from claiming any defense as against his judgment creditor. The trial court declined to pass upon the following request of defendant for a finding of fact: " 45. No act of the [defendant] nor of its counsel * * * prejudiced William H. Rhodes nor caused him to change his position for the worse."

Without going into the evidence on the point, I think it clear that that request should have been granted. And, even if estoppel could be urged against defendant by William Rhodes, it does not inure to the benefit of these plaintiffs. Their conduct was not influenced and they were not prejudiced by what defendant did. (*Lavine* v. *Indemnity Co.*, 260 N. Y. 399, 409.)

The judgments herein should be reversed on the law and the complaints dismissed, with costs, and defendant's request to find No. 45 should be granted.

All concur.

In each case judgment reversed on the law, with costs, and complaint dismissed, with costs. Additional finding of fact made in accordance with defendant's request No. 45.