### OHIO CASUALTY INS. CO. v. PLUMMER et al.

#### No. 685.

District Court, S. D. Texas, Houston Division.

Dec. 5, 1935.

King, Wood & Morrow and Earl Cox, all of Houston, Tex., for plaintiff.

Allen, Helm, Jacobs & Settegast, S. M. Helm, Vinson, Elkins, Sweeton & Weems, and Raybourne Thompson, all of Houston, Tex., for defendants.

KENNERLY, District Judge.

The plaintiff, Ohio Casualty Insurance Company (an insurance company and a citizen of Ohio), issued February 27, 1935, a policy of automobile liability insurance to Carl Short, and Carl Short, Inc., a Texas corporation engaged in drilling oil wells (citizens of Texas), covering a Ford De Luxe coupé automobile (for brevity called car) belonging to, and used in the business of, such corporation. While the car was being driven, in Wharton county, in this district, on June 9, 1935, at night, by defendant Sidney Plummer, Jr., a minor (for brevity called Plummer, Jr.), son of defendant Sidney Plummer, Sr. (for brevity called Plummer, Sr.), one of the field superintendents of operation of such corporation (both for brevity called the Plummers, and both citizens of Texas), it collided with a truck occupied by Murry T. York and a dozen or more other persons (citizens of Texas, and defendants herein), injuring and killing York and injuring some, or all, of such other persons. Alleging that an actual controversy within the meaning of the Declaratory Judgment Act of Congress of June 14, 1934, and amendment Act August 30, 1935, § 405 (section 400, title 28, U.S.C.A.) exists between plaintiff, upon the one hand, and the Plummers and the other defendants (who are either heirs of York or were injured in such collision, or both), upon the other hand, by reason of the claim of such defendants (other than the Plummers) that, under the terms of such policy of insurance, and under the facts leading up to and surrounding such collision, plaintiff is liable to such defendants for their damages caused by such injuries, which liability plaintiff denies, plaintiff brings this suit under such act, praying that the court enter a declaratory judgment in accordance therewith, declaring the rights and other legal relations of the parties hereto.

The motion to dismiss, motion to abate, and motion to sever of defendants (other than the Plummers), filed August 8, 1935, and their answer, filed November 9, 1935, have been treated as properly filed under Equity Rules 29 and 30 (28 U.S.C.A. following section 723), and such motions heard and taken with the case on the merits. The Plummers filed answers also.

■ There is diversity of citizenship, and the controversy involves more than $3,000, exclusive of interest and costs, and the court has jurisdiction (Jud. Code, § 24 (1), section 41, title 28, U.S.C.A.; United States v. West Virginia, 295 U.S. 463, 55 S.Ct. 789, 79 L.Ed. 1546). All issues of fact, as well as of law, have been submitted to the court, there being no request for the submission of issues of fact to a jury, as provided in such act. The witnesses have been heard orally. The facts fairly deducible from the evidence are as follows:

(a) February 15, 1935, plaintiff issued a policy of liability insurance, covering

the car, which belonged to and was owned by Carl Short, Inc., a Texas corporation engaged in drilling oil wells, for a period beginning February 27, 1935, at noon, and ending February 27, 1936, at noon, the coverage of the policy including both Carl Short, Inc., and Carl Short. The policy provided as follows:

"The automobile is and will be used only for Business and pleasure purposes excluding Commercial delivery. The automobile is and will be principally used in Louise, Wharton County, Texas."

The policy insures Carl Short, Inc., and Carl Short:

"Against direct loss or expense by reason of the liability imposed upon the assured by law for damages by reason of the ownership, maintenance or use of the automobile described in Statement V of the Schedule of Statements (including loading and unloading thereof), to an amount not exceeding the limits hereinafter stated, if such claims for damages are made on account of bodily injuries or death accidentally suffered or alleged to have been suffered by any person or persons, as the result of an accident occurring while this policy is in force.

"The Company's liability for loss on account of an accident resulting in bodily injuries and/or death to one person is limited to Five Thousand Dollars ($5,000.-00); and, subject to the same limit for each person, the Company's total liability for loss on account of any one accident resulting in bodily injuries and/or death to more than one person is limited to Ten Thousand Dollars ($10,000.-00); but, if other amounts are named in Statement IV of the Schedule of Statements, such amounts shall fix such limits of liability."

The policy also provides:

"That any insurance granted under Section II hereof shall, in addition to the named Assured herein, inure to the benefit of any person, except chauffeurs and domestic servants, lawfully operating the automobile described in Statement V of the Schedule of Statements, as well as to the benefit of any person, firm or corporation legally responsible for the operation of said automobile, but only while said automobile is being used with the express or implied consent of the Assured named in this policy, or of an adult member of said Assured's household, other than a chauffeur or domestic serv-

ant, for the purposes specified in the Schedule of Statements. It is understood and agreed that the extended coverage defined herein shall not be available to any person, firm or corporation in the business of operating an automobile repair shop, public garage, sales agency or service station, or the agents or employees thereof. It is further understood and agreed that the extended coverage defined herein shall not apply in event this policy is issued to cover automobile dealers', automobile manufacturers', garage or service station automobiles, or any automobiles used for the carrying of passengers for compensation, except automobiles owned by funeral directors."

It also provides that plaintiff shall:

"Investigate all accidents covered by this policy and to defend in the name and on behalf of the assured any suit brought against the Assured to enforce a claim, whether groundless or not, for damages suffered or alleged to have been suffered on account of the bodily injuries or death or the damage to or the destruction of property as set forth in this section; and pay all costs taxed against the assured in any such defended suit and all expenses incurred by the Company, also all interest accruing after entry of judgment, upon such part thereof as shall not be in excess of said limits of liability, until the Company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereof, also to pay for such first medical aid as shall be imperative at the time of the accident."

(b) Plummer, Sr., whose residence is Louise, in Wharton county, Tex., was on June 9, 1935, and had been for a number of years prior thereto, field superintendent of operations in that vicinity of Carl Short, Inc., and the car had been, prior to June 9, 1935, placed in his custody and control by such company, to be used exclusively by him and exclusively in the business of Carl Short, Inc., which business was drilling oil wells. Plummer, Sr., had instructions from Carl Short, Inc., and Carl Short to use, and allow such car to be used for no other purpose and by no other person.

(c) Plummer, Sr., had a son, Plummer, Jr., nineteen years of age, who lived in the home of Plummer, Sr., at Louise, and was a member of Plummer Sr.'s fam-

ily, consisting of his wife, one other son, and one daughter.

On the night of June 9, 1935, Plummer, Sr., and his family, except Plummer, Jr., went to a nearby summer resort, leaving the car in his front yard, or in front of his house, with the car keys therein. Before leaving, the Plummers had a conversation about the car, in which Plummer, Sr., gave positive instructions to Plummer, Jr., not to, and that he must not, use it. After Plummer, Sr., had left, Plummer, Jr., without the knowledge or consent of Plummer, Sr., and against his positive instructions, took the car, and in company with one Vandiver Mooney (formerly a defendant herein, but dismissed from the case), went to Hillje, a nearby town, to a dance, and from there started to a swimming pool at El Campo, another nearby town. This use of the car was not on business of either Carl Short, Inc., or Carl Short, or Plummer, Sr., but on a pleasure trip of Plummer, Jr. En route to El Campo, a collision occurred between the car and a truck, injuring and killing Murry T. York, and injuring the other defendants who occupied the truck.

(d) Plummer, Jr., had on one or two previous occasions thus taken and used the car on similar pleasure trips of his own, without the knowledge or consent of Plummer, Sr., and Plummer, Jr., had twice previously driven the car by direction of Plummer, Sr., on business of Carl Short, Inc., once on a trip to Houston to obtain supplies for Carl Short, Inc., and once on a trip to Wharton to obtain license for the car. Plummer, Jr., had also driven the car five or six times by direction of Plummer, Sr., in and about Louise, sometimes accompanied by Plummer, Sr., sometimes on business for Carl Short, Inc., and sometimes on business of Plummer, Sr. Neither Carl Short, Inc., nor Carl Short had notice or knowledge of any kind or character that Plummer, Jr., had ever at any time driven the car, either on business of Carl Short, Inc., or on business of Plummer, Sr., or that he had taken and used the car on pleasure trips of his own. Neither Carl Short, Inc., nor Carl Short knew that Plummer, Jr., had taken the car to go on the pleasure trip on which the collision occurred. At the time of the collision, Plummer, Jr., was using the car on a pleasure trip of his own, without the express consent of either Carl Short, Inc., or Carl Short, and without the knowledge of either of them. At the time of the collision, Plummer, Jr., was not lawfully, but was unlawfully, using and operating the car, in that he had taken possession of it and driven it away without the knowledge or consent of either Carl Short, Inc., or Carl Short, or Plummer, Sr. Plummer, Jr., at the time of the collision, was using and operating the car without the knowledge or consent of any person having any ownership or control thereof.

(e) After the collision, Plummer, Sr., was notified, and returned to Louise, and called Carl Short, who resided in Dallas, by long distance telephone, and advised him of the collision, which was the first information that he had about it.

(f) As set forth in plaintiff's bill, defendants (other than the Plummers) are claiming the right to recover damages for their injuries from the Plummers, Carl Short, Inc., and Carl Short, and some of them have already sued, and the others intend and expect to sue the Plummers and Carl Short, Inc., and Carl Short, to obtain judgments against them for their damages, and are claiming the right to recover the amount of any such judgments, up to the amount of coverage of the policy, from plaintiff, upon the claim and theory that plaintiff, under the provisions of the policy, is liable therefor.

■ 1. The question of the constitutional validity of the Declaratory Judgment Act, upon which plaintiff's suit is based, is not raised by defendants. This court had occasion to consider the question in Boggus Motor Company v. Onderdonk (D.C.) 9 F.Supp. 950, and while it is not there discussed, the conclusion was reached that under Nashville, C. & St. L. Ry. Co. v. Wallace, 288 U.S. 249, 258, 53 S.Ct. 345, 77 L.Ed. 730, 733, 87 A.L.R. 1191, and cases there discussed and reviewed, the act is constitutionally valid. See, also, State of Alabama v. State of Arizona, 291 U.S. 286, 54 S.Ct. 399, 78 L.Ed. 798, 799; United States v. West Virginia, supra; Mississippi Power & Light Co. v. City of Jackson (D.C.) 9 F.Supp. 564; Interstate Natural Gas Company v. Gully (D.C.) 8 F.Supp. 174; Borchard Declaratory Judgments, c. VII of part 1, pp. 249 to 301.

■ 2. But defendants say that if plaintiff is entitled to proceed under such act, it must do so at law, and not in eq-

uity, and they pray that plaintiff's action for that reason be dismissed. While decision sustaining defendants' view would not bring about a dismissal of plaintiff's action, but a transfer to the law side (Jud. Code, § 274a, section 397, title 28, U.S.C.A.), the question is presented of whether this action is properly on the equity side. While I would be unwilling to hold that actions at law may not in certain cases be brought and prosecuted under the act, it is clear that the power conferred by the act upon the District Courts to declare the rights and other legal relations of persons, between whom there is an actual controversy, is of an equitable nature, and one generally exercised by courts of equity, rather than by courts of law. I think this case is properly on the equity side. Borchard's Declaratory Judgments, pp. 137 to 146. I reach this conclusion with less difficulty, because of the provisions of the act insuring the trial of issues of fact by a jury where demanded by either party. Here there has been no such demand, but the parties have voluntarily gone to trial before the court. Duignan v. United States, 274 U.S. 195, 198, 47 S.Ct. 566, 71 L.Ed. 996, 999.

■ 3. The next question is whether, under the facts here, there is an "actual controversy" between plaintiff and defendants, within the meaning of such act.

It clearly appears both from the pleadings and the evidence that the defendants (other than the Plummers) are claiming that the negligence of the Plummers caused the injury and death of York, and their injuries; that they are entitled to sue and have judgment for their damages for such injuries against the Plummers, Carl Short, Inc., and Carl Short; that each defendant may sue them in a separate suit; and if and when they obtain judgment against them, each may then sue and be entitled to judgment against plaintiff, under the provisions of the policy. It also appears that under the provisions of the policy, plaintiff, if liable to defendants, is required to defend each and all of the many suits which defendants may thus bring. That under these facts, there is an actual controversy within the meaning of the act, and that the act is applicable, I entertain no doubt. Nashville, C. & St. L. Ry. Co. v. Wallace, supra, and cases there cited and discussed. Boggus Motor Co. v.

Onderdonk, supra; Penn v. Glenn (D.C.) 10 F.Supp. 483; Black v. Little (D.C.) 8 F.Supp. 867; Borchard Declaratory Judgments, c. I and II, part 1, pp. 1–61, and c. VII, part 2, pp. 490 to 497. At page 490, there is this language, which is particularly applicable here:

"The fact that insurance is a contract which looks to future benefits, that it is a highly fiduciary relationship requiring the utmost good faith, and that it often embraces several or a series of collateral relationships involving those causing the loss, and in the case of indemnity or surety contracts, the position of the principal debtor, makes these contracts peculiarly susceptible to effective adjudication by declaration.

"This is due to several circumstances: (1) because many questions of the validity of the policy are likely to arise before the loss insured against occurs and it is important that these claims and defenses be promptly adjudicated; and (2) because insurance companies operating under public supervision are usually responsible concerns against whom a declaration of liability is equivalent to a judgment for damages."

Again at page 493 is this language:

"Some striking cases have occurred in the United States in which the insured or the company was enabled to determine its rights before taking an irretrievable and perhaps mistaken position by securing a declaratory judgment of their legal relations."

These cases, which are cited in the footnotes, are instructive and enlightening.

4. The other questions raised by defendants, respecting such act, appear to be without merit, and need not be discussed.

■ 5. This brings us to a discussion of whether, under the facts as found, plaintiff is, under the provisions of the policy, liable in damages to the defendants who were injured in and by the collision. My conclusion is that plaintiff is not.

This view is sustained by more than one provision of the policy, but it seems necessary only to discuss the provision which sets forth that the policy shall inure to the benefit of a person or persons other than the assured (Carl Short, Inc., and Carl Short):

"* * * Only while said automobile is being used with the express or implied consent of the assured named in this policy, or of an adult member of said assured's household, other than an officer or domestic servant, for the purposes specified in the Schedule of Statements."

It is clear that the car at the time of the collision was not being used with either the express or implied consent of either Carl Short, Inc., Carl Short, or Plummer, Sr. (if he be regarded as coming within the provision quoted), or of any person named in the provision quoted. Nor was the car being used for any of the purposes specified in the schedule of statements contained in the policy, i. e., business and pleasure purposes of Carl Short, Inc., and Carl Short. The cases which appear to support this view are: Globe Indemnity Co. v. Nodlere (C.C.A.) 69 F.(2d) 955; Trotter v. Union Indemnity Co. (D.C.) 33 F.(2d) 363, affirmed (C.C.A.) 35 F.(2d) 104; Frederiksen v. Employers Lia. Assurance Corp., Ltd. (C.C.A.) 26 F.(2d) 76; American Automobile Ins. Co. v. Jones, 163 Tenn. 605, 45 S.W.(2d) 52; Indemnity Co. of North America v. Sanders, 169 Okl. 378, 36 P.(2d) 271; Indemnity Co. of North America v. Lahman, 169 Okl. 380, 36 P.(2d) 274; Blashfield Cyclopedia of Automobile Law and Procedure, vol. 6, § 3943, page 326. The contrary view seems to have some support in Ocean Accident & Guaranty Co. v. Schmidt (C.C.A.) 46 F.(2d) 269; Slavens v. Standard Acci. Ins. Co. (C.C.A.) 27 F.(2d) 859; U. S. Fidelity & Guaranty Co. v. Hall, 237 Ky. 393, 35 S.W.(2d) 550; Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.(2d) 473, 72 A.L.R. 1368; American Automobile Ins. Co. v. Cone (Tex.Civ.App.) 257 S.W. 961; Denny v. Royal Indemnity Co., 26 Ohio App. 566, 159 N.E. 107; Hobbs v. Cunningham, 273 Mass. 529, 174 N.E. 181; Boudreau v. Maryland Casualty Co., 287 Mass. 423, 192 N.E. 38; Peterson v. Maloney, 181 Minn. 437, 232 N.W. 790; Odden v. Union Indemnity Co., 156 Wash. 10, 286 P. 59, 72 A.L.R. 1363; Ocean Acci. & Guarantee Corp. v. Bear, 220 Ala. 491, 125 So. 676; Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A.L.R. 500; Zurich v. Ballay (La.App.) 149 So. 281; Rhodes v. Ocean Accident & Guarantee Corp., 239 App.Div. 92, 266 N.Y.S. 681.

It follows that plaintiff should have judgment, declaring the rights and legal relations of the parties in accordance with this view.