PACIFIC INDEMNITY CO. v. McDONALD et al.

No. 9736.

District Court, D. Oregon.

Nov. 15, 1938.

James G. Wilson (of Wilson & Reilly), of Portland, Or., for plaintiff.

Harvey S. Benson, of Portland, Or., for defendant Ted McDonald.

G. R. Jack (of Butler & Jack), of Oregon City, Or., for defendant Evelyn Brune.

## McCOLLOCH, District Judge.

A fateful Sunday afternoon in the summer of 1936, Evelyn Brune, a young unmarried woman, accepted the invitation of McDonald to drive around Mt. Hood Loop, one of the scenic highways of Western Oregon. The events occurring on the drive are responsible for Miss Brune and McDonald's being defendants in this proceeding. Plaintiff is the insurer of McDonald's car, which was wrecked during the course of the drive, with serious injuries to Miss Brune. Brune is suing McDonald in the State courts under the Oregon "guest statute",[1] and plaintiff claims collusion between the parties, as well as a false statement by McDonald, regarding the cause of the accident, and non-co-operation in the defense of the Brune suit. Plaintiff asks a declaratory judgment of non-liability on this account.

Defendants demanded a jury, but, upon plaintiff's objection, the case was tried without calling a jury, and a prior memorandum opinion was filed holding against plaintiff on the charges of collusion and conspiracy, and dismissing the bill of complaint as to the other matters. Plaintiff now suggests that the court should retain jurisdiction and proceed to find on the issues of false statement and non-co-operation, whereas, defendants renew their demand that a jury be called to try these issues, because of their legal nature.

### The Facts.

McDonald made some claims at the trial, and previously to plaintiff's attorney, that he was an unusually good drinking man. According to his own testimony, he neglected to go to bed the night before taking the trip with Miss Brune. Sunday morning he resumed drinking on a pint of Monogram whiskey, and finished the pint about 10 o'clock at night, as he and Miss Brune were about five miles from their destination.

Miss Brune asserted at the trial that, while at McDonald's request she put the bottle to her lips several times during the trip, she actually did not drink. Due to drowsiness or intoxication, McDonald lost control of his car, which catapulted into a ravine, with the result that Miss Brune was seriously, almost fatally, injured. McDonald's injuries were minor.

Now, Miss Brune has sued her admirer under the Oregon "guest statute" for $25,000 general damages, and this proceeding is to restrain McDonald and Brune (in addition to the declaratory relief asked for) from taking steps to collect any judgment that Brune might obtain against McDonald.[2] Defendant McDonald's default has been entered in the state court, but no judgment as yet taken.

These are the circumstances that followed the accident and led to the bringing of the present proceeding:

After the accident McDonald called on plaintiff's agent, who had written the insurance on his car, advised him of the accident and gave him a statement as to how it occurred. McDonald falsely stated

---

[1] Sec. 55-1209, Oregon Laws 1930: "No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others."

[2] The Oregon statute permitting a judgment creditor in a tort action to sue the judgment debtor's insurer is Section 46-143, Oregon Code 1930.

that he had been crowded off the road by another car.

Later, after having consulted an attorney, McDonald acknowledged that his first statement as to the cause of the accident was false. As to the drinking, he stated: "Shortly after we started out we each had a drink of whiskey out of the bottle. Miss Brune did not have more than three or four drinks altogether. * * * Miss Brune protested against my drinking. * * * I did continue to drink until the bottle was empty. * * * Miss Brune did not at any time protest about the manner in which I was operating the car."[3]

Much of the later difficulty between McDonald and plaintiff's attorney as to the form of answer in the Brune case was as to the part Miss Brune took in the drinking and whether she protested McDonald's manner of driving.

In due course the Brune action was commenced and thereupon plaintiff's adjuster turned the file of the case over to John F. Reilly, plaintiff's regular attorney in the City of Portland, Oregon, and Mr. Reilly prepared an answer based on the file.

### Dispute Over Answer.

McDonald declined to verify the answer because, he said, it cast unwarranted aspersions on Miss Brune's character. Mr. Reilly prepared another answer. This McDonald also declined to sign, this time on the advice of an attorney. A third answer was prepared, but McDonald did not return to Reilly's office to sign this, whereupon Mr. Reilly broke off negotiations and, in behalf of the company, declared a breach of the co-operation clauses of the policy. He also based forfeiture of the policy on McDonald's initial false statement as to the cause of the accident. The policy conditions appear in the margin.[4]

But one further fact seems necessary to be set forth: Having taken the position that McDonald had breached the conditions of the policy, Mr. Reilly, with characteristic aggressiveness, then assumed the offensive and applied to the state court, where the Brune action was pending, for the right to intervene in that proceeding. The lower court allowed the intervention, but on appeal to the Supreme Court of the State,[5] it was held that the Oregon intervention statute did not contemplate intervention in this type of case. Thereupon, the present proceeding followed.

As stated before, plaintiff resisted defendants' demand for a jury trial, on the ground that the proceeding was equitable in nature, and that a jury, if granted, could only serve in an advisory capacity. After hearing argument on the point, I heard the testimony, without calling a jury.

At the conclusion of the testimony, I suggested to counsel that I would appreciate briefs on the defendants' right to a jury trial, and I believe that the respective positions of the parties *at that stage*

---

[3] At the trial McDonald sought to justify the first statement on the ground that Miss Brune's recovery was then doubtful and he was fearful of being charged with manslaughter.

[4] "Accidents, Claims and Suits:

"(B) Upon learning of an accident involving bodily injuries or death, or damage to property of others, the Assured shall give prompt written notice thereof with all the information obtained at the time to the Los Angeles office of the Company or to one of its duly authorized agents. The Assured shall give like notice with full particulars of any claim made on account of such accident. If suit is brought against the Assured to enforce such claim the Assured shall promptly forward to the Los Angeles office of the Company every summons or other process that may be served upon the assured.

"Co-operation of Assured:

"(C) The Assured shall not voluntarily assume any liability, nor incur any expense, other than for immediate medical or surgical relief, nor settle any claim except at the Assured's own cost. The Assured, whenever requested by the Company, and at the Company's expense, shall aid in securing information and evidence and the attendance of witnesses, and shall, upon notice from the Company, personally attend the trial of any issue arising out of any such legal proceeding and shall cooperate with the Company (except in a pecuniary way) in all other matters which the Company deems necessary in the defense of any suit, or in the prosecution of any appeal. The Assured may, at the Assured's own cost, have the Assured's attorneys participate in the defense of any suit or in the prosecution of any appeal."

[5] Brune v. McDonald, 158 Or. 364, 75 P.2d 10. Oregon intervention statute—Section 1-315, Oregon Code 1930.

*of the case* can best be shown by excerpts from the briefs:

Plaintiff stated its position thus:

"The statute (Federal Declaratory Judgment Act) itself recognizes the right to make a declaratory judgment either in an action at law or in a suit in equity and does not determine the character of proceeding in which such declaration shall be made. The character of the proceeding is determined by facts other than the declaratory judgment statute, but gives the right to make the declaratory judgment or decree, whatever the nature of the proceeding. Therefore, it is essential to determine whether or not the facts stated in the complaint bring the cause within the equity jurisdiction or the law side of the court.

"The essence of the complaint is to declare the policy cancelled or forfeited. *Cancellation of instruments is primarily an equitable proceeding as distinguished from a legal proceeding. * * *"* (Italics added.)

Quoting from defendant Brune's brief:

"The matters set forth in the bill of complaint point to a breach of the two provisions last set forth. (The provisions referred to were the policy conditions requiring an immediate true statement of the cause of accident, and co-operation in the defense of any action brought as a result of an accident). Prior to the enactment of the Declaratory Judgment statute, the normal procedure was for the injured party, upon failure of an insurance company to pay a judgment in his favor against the assured, to bring an action upon the policy against the insurer. In view of the fact that the injured party stands in the shoes of the assured, the insurance company has the right to plead the breach of any covenants contained in its contract of insurance with the assured. *The action to recover on the policy is essentially an action at law, and the defenses arising under alleged breaches of various covenants in the contract are essentially legal defenses. There is therein nothing that would warrant a court in shifting the matter to the equity side of the court. They are good and valid defenses at law.* That such has been the manner in which these defenses are contemplated is well borne out by the two most prominent Oregon cases on the subject, to-wit: Allegretto v. Oregon Automobile Insurance Co., 140 Or. 538, 13 P.2d 647, and Z. J. Riggs v. New Jersey Fidelity & Plate Glass Co. of Newark, New Jersey, 126 Or. 404, 270 P. 479. *That being the case, therefore, it would seem that complainant's memorandum does not accurately divine the nature of this proceeding. The mere, fact of denominating it a bill in equity, and the mere fact of its initiating the proceeding rather than waiting to defend upon a suit on the policy does not change the nature of the matters they set up. The facts stated in the complaint certainly bring the cause within the law side of the court irregardless of what the complainant chooses to call its proceeding."* (Italics added.)

After consideration I filed the following memorandum, which set forth my views of the case, as it had been denominated and presented by the parties:

"Memorandum.

"Plaintiff characterizes this case as one for cancellation of a written instrument, and attention is called that cancellation is a recognized equitable doctrine.

"Obviously, more than declaratory relief is sought. In addition to a declaration of non-liability to defendants, plaintiff prays that defendants be temporarily restrained and later permanently enjoined from bringing any proceeding on the insurance policy which might lead to a judgment against plaintiff. This is something less than cancellation of the entire policy, but in disposing of the case I will treat it as characterized by plaintiff as a suit in equity to cancel the policy, at least as to any liability growing out of the McDonald-Brune accident.

"I think it is accurate to say that the usual equity suit for cancellation is grounded on fraud, accident or mistake; moreover, that the usual case for cancellation of an insurance policy on the ground of fraud, is based on fraud perpetrated in connection with procuring the insurance.

"No case has been brought to my attention of a suit for cancellation of an insurance policy for breach of conditions subsequent, which I take this case to be. Passing that, however, I will treat the case as properly brought in equity, because of the allegations of conspiracy to defraud the plaintiff through reducing a fictitious claim to judgment, and as to these allegations I find on the facts for the defendants. The plaintiff has not, in my opinion, maintained

the burden of proof that the defendants are conspiring to defraud plaintiff. Both defendants took the witness stand and denied collusion to defraud the plaintiff, and I am unwilling to believe that they perjured themselves, in the absence of more direct showing to the contrary.

"With the fraud charges out of the case, what issues remain for disposition? The straight issue that defendant McDonald made false statements and declined to co-operate with plaintiff, thus breaching policy conditions. These issues are, in my opinion, not matters of equitable cognizance. On the contrary, they are legal defenses which can be asserted by plaintiff in any case which McDonald or Brune may bring against plaintiff.

"Summing up, then, I find against plaintiff on the charges of fraud and conspiracy, and because, as it seems to me, these are the only matters in the case which properly call for equitable consideration, the case should be dismissed as to the other matters for want of equity.

"Findings, Conclusions and Decree may be prepared in accordance herewith."

To the expressions therein contained, plaintiff's counsel, with his usual forcefulness, took strenuous exception. He asked for a rehearing and filed a letter memorandum stating:

"It occurs to me that the conclusion that the complaint be dismissed for want of equity does not follow from the decision of the Court deciding the equity on the merits against us. It has always been my opinion since the adoption of Equity Rule 23 (28 U.S.C.A. following section 723), that unless the equitable allegations were merely colorable and not sustained by any proof that it was the function of the Court to decide all questions on the merits even though the equitable grounds on the merits were decided contra. There are a great many decisions of the courts to this effect. It seems to me likewise that Equity Rule 22 and Section 274a of the Judicial Code (28 U.S.C.A. § 397) have a bearing on the question and that the Court should either decide all questions on the merits *or in any event perhaps transfer the same to the law side of the court.* \* \* \*" (Italics added.)

Plaintiff's Final Position.

Then followed a series of briefs and counter-briefs, and from plaintiff's later briefs I deduce that its position now is that a jury trial was not demandable of right, even had the allegations of fraud and collusion not appeared in the bill. Quoting again:

"The court, it seems to us, has erred in the assumption that because the allegations of fraud and collusion were held not sustained that there is no other equitable right in the bill to sustain the equitable jurisdiction. We submit that under the decisions of the courts under the declaratory judgment act *the mere allegation that a policy has been issued and was in effect at the time of the accident, that a controversy exists in which claim is made under the policy and denial by the insurer of any obligation under the policy and a request that the rights and obligations of the parties under the policy be declared is a sufficient equity to sustain the equitable jurisdiction of the court and that all allegations as to fraud or collusion in the bill may be treated as surplusage and the equitable jurisdiction sustained in case there are sufficient allegations to bring the bill within the minimum requirements as above stated."* (Italics added.)

Alternatively, plaintiff urges that even though I treat the issues of false statement and non-co-operation as legal questions, I should now make findings on these issues as law matters without calling a jury.

First. The Seventh Amendment to the Federal Constitution, U.S.C.A.Const. Amend. 7, guarantees a jury trial as to all matters legal in their nature, and I am unable to subscribe to plaintiff's view, even though it *appears* to be supported by some authority,[6] that proceedings under the Declaratory Judgment Act involving

---

[6] The following cases have been cited by Plaintiff. In my opinion these cases are not definitely authority for the denial of jury trial on legal issues: Ohio Casualty Ins. Co. v. Plummer, D.C., 13 F.Supp. 169; Commercial Casualty Ins. Co. v. Humphrey et al., D.C., 13 F.Supp. 174; Associated Indemnity Corporation v. Manning, 9 Cir., 92 F.2d 168; Ætna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 464, 81 L.Ed. 617, 108 A.L.R. 1000; Equitable Life Assur. Soc. v. Templeton, D.C., 19 F.Supp. 485; Columbian Nat. Life Ins. Co. v. Foulke, 8 Cir., 89 F.2d 261; Western Casualty & Surety Co. v. Beverforden, 8 Cir., 93 F. 2d 166; Stephenson v. Equitable Life Assurance Society, 4 Cir., 92 F.2d 406; Anderson v. Ætna Life Ins. Co., 4 Cir., 89 F.2d 345.

legal propositions are excepted from the Amendment. In normal course, should Brune obtain a judgment against McDonald, and either Brune or McDonald proceed on the judgment against plaintiff, defendant would plead breach of the conditions of its policy, and these would be legal defenses, triable by a jury under the guaranties of the Oregon State Constitution (if tried in the Oregon courts) and under the Seventh Amendment (if tried in this Court).[7]

In this proceeding, plaintiff is merely seeking to have an adjudication in its favor on these legal defenses in advance of being summoned as a defendant. The defendants having demanded a jury trial at the outset must now be granted one as to these defenses. It would be a strange situation if a litigant's constitutional guaranties, good when the litigant was plaintiff, were not good as to the identical issues when the litigant was a defendant. The proposition seems too plain for argument, and, because it is so plain, furnishes, in my opinion, the reason why the question of the right to jury trial has not been more fully discussed in the many cases arising of late under the various Declaratory Judgment Acts.[8]

---

[7] Sec. 17, Article 1, Constitution of Oregon: "In all civil cases, the right of trial by jury shall remain inviolate."

Seventh Amendment to the Constitution of the United States, U.S.C.A.Const. Amend. 7: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

And see a stirring opinion by Justice Rand of the Oregon Supreme Court upholding the right of jury trial in State v. Studebaker Touring Car et al., 1926, 120 Or. 254, 251 P. 701, 50 A.L.R. 81.

[8] Circuit Judge Parker's opinion in Ætna Casualty & Surety Co. v. Quarles et al., 4 Cir., 92 F.2d 321, confirming the right to jury trial in declaratory proceedings on issues legal in their nature, is the strongest statement in the reported cases that we have been able to find. He said [page 325]: "The company seems to think that by asking a declaratory judgment it became entitled to a trial in equity without a jury and that this is a sufficient reason for granting declaratory relief notwithstanding the institution of the action on the policy; but this is clearly not the case as the defense to determine which the declaratory judgment was sought was legal and not equitable in character. Where the issues raised in a proceeding for a declaratory judgment are of this nature, they must be tried at law if either party insists upon it, for the statute so provides. 28 U.S. C.A. § 400 (3). And, irrespective of this provision of the statute, it is clear that the right of jury trial in what is essentially an action at law may not be denied a litigant merely because his adversary has asked that the controversy be determined under the declaratory procedure."

Judge Parker was speaking of the defense of non-co-operation, the same as in the present case. See, also, Travelers Ins. Co. v. Helmer et al., D.C., 15 F. Supp. 355, and Maryland Casualty Co. v. Havens, D.C., Sept. 7, 1938, 24 F. Supp. 460, 461.

The views of an earlier generation of Supreme Court Justices as to the constitutional guarantee of jury trial are stirringly presented by Mr. Justice Field in Scott v. Neely, 140 U.S. 106, 11 S.Ct. 712, 35 L.Ed. 358.

Most of the States have enacted Declaratory Judgment Acts. The Federal Act was enacted in 1934. It is as follows, 28 U.S.C.A. § 400:

"(1) In cases of actual controversy except with respect to Federal taxes the courts of the United States shall have power upon petition, declaration, complaint, or other appropriate pleadings to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and such declaration shall have the force and effect of a final judgment or decree and be reviewable as such.

"(2) Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party, whose rights have been adjudicated by the declaration, to show cause why further relief should not be granted forthwith.

"(3) When a declaration of right or the granting of further relief based thereon shall involve the determination of issues of fact triable by a jury, such issues may be submitted to a jury in the form of interrogatories, with proper instructions by the court, whether a general verdict be required or not."

Associated Indemnity Corporation v. Manning, 9 Cir., 92 F.2d 168, involving issues similar to the present case, is a late case in this Circuit. It was denominated as an equity proceeding and tried in the lower court without a jury, but, in my judgment, it is not an authority that the defendants were not entitled to a jury on the issues presented, had they demanded one.

Second. In the prior memorandum opinion I passed on the only matters which seemed to me to be equitable in their nature, and I suggested that as to the legal matters (non-co-operation and making a false statement) plaintiff could have its day in court, if and when it was sued, following any judgment that might be obtained by Brune against McDonald.

Professor Borchard, the American authority on declaratory proceedings, in an able paper before the Section of Insurance Law at the last meeting of the American Bar Association,[9] grouped the cases dealing with situations similar to the one at bar, and criticized the disposition of certain Federal courts to decline to award a determination in insurance cases, where litigation was already pending in the state courts.

I recognize the injustice that may be done to plaintiff if it is denied the right to assert and have determined now the legal defenses which it claims to have to any action on the policy.

A default judgment is imminent in the state court, and plaintiff is entitled to have its liabilities towards the parties, if any, determined now. The case is different, it seems to me, from one where a judgment had already been obtained against an assured, and either the assured or one claiming a third party right under the judgment had begun a state court action against the insurer. In such a case acceptance of declaratory jurisdiction covering identical issues under litigation by the same parties in a State court might involve serious questions of policy. Cf. Carpenter v. Edmonson, 5 Cir., 92 F.2d 895, per Hutcheson, J.

■ Third. I am further persuaded to accept plaintiff's view, that it is entitled to trial and declaratory judgment in this court on the legal issues, by the provision in the new Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which have gone into effect since the earlier memorandum in this case, to the effect that the existence of another adequate remedy shall not preclude a judgment for declaratory relief in cases where it is appropriate.[10]

---

[9] Professor Borchard's paper is entitled "Declaratory Judgments and Insurance Litigation." Copies of the address may be obtained from the American Bar Association.

[10] Rule 57, Rules of Civil Procedure for the District Courts of the United States, 28 U.S.C.A. following section 723c. Note also reference to the right of jury trial in Rule 57. See, also, new Rules 38 and 39:

"*Rule 38. Jury Trial of Right.*

"(a) Right Preserved. The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate.

"(b) Demand. Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party.

"(c) Same: Specification of Issues. In his demand a party may specify the issues which he wishes so tried; otherwise he shall be deemed to have demanded trial by jury for all the issues so triable. If he has demanded trial by jury for only some of the issues, any other party within 10 days after service of the demand or such lesser time as the court may order, may serve a demand for trial by jury of any other or all of the issues of fact in the action.

"(d) Waiver. The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5 (d) constitutes a waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties."

"*Rule 39. Trial by Jury or by the Court.*

"(a) By Jury. When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the rec-

It will be the aim of this court to lend its influence towards carrying out the broad remedial purposes which inspired the new Rules of Civil Procedure. I recognize also that the Federal Declaratory Judgment Act is a much needed reform of an antiquated procedure that stood far too long in need of reform, and it shall be my purpose to give fullest effect to the Act,[11] to the end that disputes involving justiciable questions may be met and dealt with at the threshold, and that it shall no longer be necessary for one unjustly assailed to await the day and time for litigation of his adversary's choosing. It seems strange indeed that this country, progressive in so many ways, should have deferred so long making it possible for one threatened in his personal or property rights to take the initiative in obtaining judicial vindication.

However, it is not to be forgotten that trial by jury of matters legal in their nature is guaranteed by written constitutions, State and Federal, in this country,[12] while such is not the case in Great Britain, from which the declaratory judgment acts of this country were copied. In this particular hour of challenge to Democratic institutions abroad and of little faith by many in our own country in the forms and processes of Democracy, American courts should not hesitate to re-declare their faith in the jury system.

As we contemplate the brutalities of despotic power arbitrarily exercised in other lands, we can well say with Blackstone, that the right to jury trial is the glory of our law, as the great Commentator felt it to be the glory of the English law.[13]

---

ord, consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States.

"(b) By the Court. Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

"(c) Advisory Jury and Trial by Consent. In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury or, except in actions against the United States when a statute of the United States provides for trial without a jury, the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right."

[11] Ætna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000, and recent forward looking decisions like Associated Indemnity Corporation v. Manning, supra, in our own Circuit (9th), furnish precedents which assure broad and liberal application of the Federal Declaratory Judgment Act in Federal Courts.

[12] As well said by Rand, J., in State v. Studebaker Touring Car et al., supra, page 263, 251 P. page 704: " * * * the constitutional right of trial by jury is not to be narrowly construed, and is not limited strictly to those cases in which it had existed before the adoption of the Constitution, but is to be extended to cases of like nature as they may hereafter arise."

Discussions of right to jury trial in declaratory proceedings may be found in the following Law Review articles: 34 Harv.L.Rev. 697, at 714, author, Borchard; 21 Virginia L.Rev. 35, at 47, same author. Contra, suggesting doubts as to constitutional right of jury trial in declaratory proceedings, 8 Indiana Law Journal 409, beginning at 418, author, Professor Bernard C. Gavit of Indiana University; contra, also, Willis on Constitutional Law, p. 555 (a late text).

[13] Blackstone's phrase, so often quoted, appears at page 379 of Volume 3 of the Commentaries:

"Upon these accounts the trial by jury ever has been, and I trust ever will be, looked upon as the glory of the English law. And, if it has so great an advantage over others in regulating civil property, how much must that advantage be heightened, when it is applied to criminal cases! But this we must refer to the ensuing book of these commentaries: only observing for the present, that it is the most transcendent privilege which any subject can enjoy, or wish for, that he cannot be affected either in his property, his liberty, or his person, but by the unanimous consent of twelve of his neighbours and equals. A constitution, that I may venture to affirm has, under providence, secured the just liberties of this nation for a long succession of ages. And therefore a celebrated French writer (Montesquieu), who concludes, that

In any comment that may have been made herein regarding the defenses of non-co-operation and alleged false statement, it is to be understood that I am not pre-judging these issues in any way. They are for determination by the jury, hereafter to be called, under proper instructions.

An order in accordance herewith will be entered.

Clyde O. Eastus, U. S. Dist. Atty., of Fort Worth, Tex., for the United States.

R. W. Haynie, of Abilene, Tex., in pro per.

because Rome, Sparta, and Carthage have lost their liberties, therefore those of England in time must perish, should have recollected that Rome, Sparta, and Carthage, were strangers to the trial by jury."

A strong recent defense of jury trial is to be found in the concurring opinion of Mr. Justice Black in United Gas Public Service Co. v. State of Texas, 303 U.S. 123, beginning at page 146, 58 S.Ct. 483, 82 L.Ed. 702.